**STATE of Missouri, Plaintiff–Respondent,**

v.

**Kevin James BRUSATTI, Defendant–Appellant.**

**No. 51732.**

Missouri Court of Appeals, Eastern District, Division One.

Dec. 22, 1987.

Motion for Rehearing and/or Transfer Denied Jan. 26, 1988.

Application to Transfer Denied March 15, 1988.

Steven R. Sallerson, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was found guilty by a jury of rape and sentenced to a term of six years' imprisonment in accordance with the jury assessment. He appeals; we affirm.

Defendant was convicted of raping the 14–month–old daughter of his live-in girl-friend. Prior to leaving for work on June 14, 1985, the mother of the victim changed her infant daughter's diaper. The mother saw no problems, including bleeding, in the daughter's vaginal area at that time. When the mother left with the child at 7:00 a.m. defendant was in bed. The mother went to her sister's home shortly after 7:00 a.m. and left her daughter there for the day. The mother's sister changed the baby's diaper twice that day and noticed no bleeding or anything else unusual in her vaginal area.

The sister called the child's mother around 3:00 p.m. to tell her that defendant

had picked up the child. When the mother called home shortly after 3:00 p.m., defendant answered and said the child was playing in her room and "everything was okay." About 10 minutes later defendant called the mother and told her that the child was bleeding from the vagina and he did not know why. The mother told defendant to bring the child to the hospital where she worked. The child's pediatrician, who was on duty at the time, examined her in the hospital emergency room. His examination revealed a blood clot hanging from the vagina opening and a tear of the hymen ring. He said the child had no previous trouble in her vaginal area.

Police officers and a child abuse investigator with Division of Family Services arrived at the hospital, and defendant was taken to the county police station for questioning. After being interrogated, defendant called the child's mother at the hospital and told her that he "did it." She went home where she discovered the "bed was all messed up and there was blood on the bed and on the quilt and on the floor."

Detective John Schupp testified about evidence seized from the house where the crime occurred. Two police officers testified about the questioning of defendant. Detective Sam Yarbrough of the St. Louis County Police Department said he was called to his office on the evening of June 14, 1985, to talk with defendant. After Yarbrough advised defendant of his rights, defendant admitted to Yarbrough that he had engaged in sexual intercourse with the child. Yarbrough stated that defendant "initially said he had been the one to injure the victim and had done so by inserting his finger into the vagina, and then he retracted that and said he put his penis into her vagina."

Michael Williams, a detective with the juvenile division of the county police department, later took a tape recorded statement from defendant in which he "admitted putting his penis into" the child. Defendant's statements to Yarbrough and Williams were admitted into evidence. Defendant testified, denying he used his penis and contending he made the statements because of threats from the officers, including Yarbrough.

In his sole point on appeal, defendant contends the trial court erred "in permitting the state's seventh peremptory challenge after the jury had been sworn." Defendant's allegation of error concerns an incident on the second day of trial. After Detective Yarbrough had testified, the court recessed and admonished the jury. At that time Juror Number 9, Ms. Jo Ann Powell, told the court on the record, "The officer just here is my cousin. I did not realize he was on the force. He is my first cousin and I have not seen him in three years and that was at a funeral to say 'hi' and 'good-bye.'"

THE COURT: Do you have anything?

[PROSECUTOR]: Do you think you would give his testimony more credence?

MS. POWELL: No. In fact, it would all be the other way.

[PROSECUTOR]: Could you explain that?

MS. POWELL: I have heard some things about the way he conducts himself. It would be in my mind, there would be some bad things there. Yes, that would be there.

[PROSECUTOR]: Since we have two alternate jurors, I ask that she be excused. Would it be your wish you be excused?

MS. POWELL: Yes, I do.

[DEFENSE COUNSEL]: The things you have heard are hearsay?

MS. POWELL: Totally hearsay, but it is still there.

[DEFENSE COUNSEL]: Would it prevent you from feeling, looking at his face and actions, and being fair as you would with another officer?

MS. POWELL: I honestly—I am just not sure.

[DEFENSE COUNSEL]: Could you be objective about it?

MS. POWELL: For his testimony, I would try.

THE COURT: We have asked if you could set aside the things you have known, listen to the evidence, and there

is an Instruction I read to you, could you give each side a fair and just trial?

MS. POWELL: With everything else, yes, but I honestly don't know with this officer. All I can say is I would try.

[PROSECUTOR]: Ma'am would you please not say anything to the other jurors?

THE COURT: Andy [referring to defense counsel], I think she is locked out. It appears she has some prejudices.

[DEFENSE COUNSEL]: She said she was going to be fair. We all have problems with this case.

THE COURT: She said except for him.

[DEFENSE COUNSEL]: At this point I would say she answered the questions truthfully and Mr. Yarbrough is not a police officer. She does not trust Mr. Yarbrough. She was not asked by the prosecutor if she knew him.

[PROSECUTOR]: Or if he was a lay person and said she would not believe him. She came forward and said she cannot put her preconceived notions out of her mind and the weight to be given to his testimony.

THE COURT: I am going to sustain the objection and put Juror Number 13 in her place.

[DEFENSE COUNSEL]: For the record, I do not believe the Court has any grounds for that.

THE COURT: All right.

At this point Court was in recess until 10:47 a.m. at which time proceedings took place in court, without the jury, as follows:

THE COURT: Let the record show that I have sustained the State's motion over the objections of defendant to excuse Jo Ann Powell, Juror Number 9, and we will replace her with Mr. Robert Kessler, Juror Number 13.

We note that at trial and in his new trial motion, defendant's complaint was that there was insufficient reason to sustain an objection for cause to Ms. Powell; therefore, the state was, in effect, given an additional peremptory challenge. No contention was made about the timeliness of the state's objection to Ms. Powell.

Defendant's objection misses the mark in two respects. First, it analyzes the state's objection from the viewpoint of cases that find no abuse of discretion on the part of trial judges who deny defendants' motions to strike for cause. Second, defendant's cases pertain to challenges made prior to the swearing of the panel. Here, the court was confronted with a juror qualification issue which arose after the presentation of some of the evidence but prior to submission to the jury.

In 1957, the legislature provided for the impaneling and selection of alternate jurors in Missouri. That statute, § 494.065, as amended, provides:

If in any case, civil or criminal, to be tried before a jury in a court of record, it appears to the court to be appropriate, the court may direct that not more than four jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be selected in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the principal jurors. Alternate jurors who do not replace principal jurors shall be discharged after the jury retires to consider its verdict. Each side is entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be impaneled and two peremptory challenges if three or four alternate jurors are to be impaneled. The additional peremptory challenge may be used against an alternate juror only, and the other peremptory challenges allowed by law shall not be used against the alternates.

The statute provides that alternate jurors are to "replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or dis-

qualified to perform their duties." Here, a juror notified the court that she had discovered she was a cousin of one of the state's principal witnesses. She said that she would not give his evidence more credence; in fact, because of what she had heard about "the way he conducts himself," it would "all be the other way." She was unsure if she could be as fair regarding his testimony as she would with another officer's, although she said she "would try."

The record shows the possibility of bias and prejudice against one of the parties. Although wide discretion is given the trial judge on challenges for cause during voir dire, the courts have always supported the proposition that, in close cases, the better practice is to sustain rather than overrule a motion to strike for cause and, thus, most cases on appeal involve denials of challenges to jurors. As was said in *State v. Youngblood*, 648 S.W.2d 182 (Mo.App. 1983):

> While it is always better for a trial judge to remove a potential juror from a panel for cause, if there is the slightest hint of bias or prejudice on the part of a jury panelist, practicalities and common sense dictate that the trial judge weigh all factors, including the jurors' responses, demeanor, and attitude, before deciding.

648 S.W.2d at 185.

Here, a juror found out she was the first cousin of a principal witness and determined that she might be prejudiced against his testimony. We can find no abuse of discretion on the part of the trial court, nor is there any real claim of prejudice. *See State v. Woods*, 705 S.W.2d 76, 78 (Mo.App. 1985); *Youngblood*, 648 S.W.2d at 188–89; *Milam v. Vestal*, 671 S.W.2d 448, 452–53 (Mo.App.1984); *Landers v. State*, 165 Ind. App. 221, 331 N.E.2d 770, 777 (1975).

In *Metropolitan Paving Co. v. International Union of Operating Engineers*, 439 F.2d 300 (10th Cir.1971), the bailiff overheard a remark of a juror and reported the remark to the judge who replaced the juror with an alternate. Referring to Federal Rule of Civil Procedure 47(b), a rule similar in language to § 494.065, RSMo 1986, the

court affirmed the trial court's action citing its case of *United States v. Chapman*, 158 F.2d 417 (10th Cir.1946) which states "an interested party to a lawsuit has no vested right in any particular juror. The right of challenge is the right to exclude incompetent jurors, not to include particular persons who may be competent." *Id.* at 419.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.