**STATE of Missouri, Respondent,**

v.

**Luther WELLS, Appellant.**

**No. 70254.**

Supreme Court of Missouri,
En Banc.

March 5, 1991.

Craig A. Johnston, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Chief Justice.

The defendant was convicted of first degree murder and, in accordance with the jury's verdict, was sentenced to death. He was also convicted of armed criminal action and sentenced to life imprisonment. The appeal was held in abeyance pending proceedings under Rule 29.15, which were heard by the judge who presided at the trial. The judge found that the allegations of ineffective assistance of counsel set forth in the defendant's *pro se* 29.15 motion were well taken, and ordered a new trial.[1] The state appealed from this order and, in accordance with Rule 29.15, the two appeals were consolidated. We conclude that the order granting a new trial is not shown to be clearly erroneous, and so affirm this order. There is no need to consider the merits of the appeal from the conviction and sentence.

Attention to the basic facts the jury could have found is necessary. In March of 1986 the defendant, an inmate at St. Mary's Honor Center, was visiting in a home occupied by his niece, Flora Hawlett, and Harry Truman Burkeen. Also present were several others including the victim, Joseph Judd. Most of those present seem to have been on, or over, the fringe of the law. Judd had an argument with the defendant, who abruptly stabbed him. The defendant balked at calling an ambulance, fearing that his deed would be discovered, but he later said he would take Judd to a hospital.

Hawlett, Burkeen and the defendant then left in Hawlett's car, with Judd in the back seat. The defendant drove. Instead of stopping at a hospital he continued to drive for about half an hour after passing the hospital exit. He then stabbed Judd twice more, dragged him out of the car, and stabbed him repeatedly. Judd was later found dead at the side of the road. The defendant was arrested the next day and made several confessions, including a videotaped reenactment of the crime.

Hawlett and Burkeen testified at the trial, and the confessions were introduced. It was shown that the defendant's clothing was spotted with blood of a type which could have been Judd's, but the type was not uncommon. The defendant did not testify. His counsel, in cross-examination and closing argument, planted the suggestion that Burkeen was the killer.

Evidence at the 29.15 hearing showed that the defendant, prior to the trial, asked his trial counsel to obtain a letter Hawlett had written to him while he was in jail, in which she said she knew that Burkeen was guilty and that the defendant was not.[2] The defendant had had a series of public defenders, and he turned the letter over to one of his earlier lawyers. The court found that trial counsel made no effort to get this important piece of evidence, before or during the trial. Defense counsel, testifying on direct examination at the postconviction hearing, explained her lack of effort by asserting that she did not believe that there was any such letter. She was proved wrong. The defendant got possession of the letter after the trial was over and it was introduced at the 29.15 hearing.

At the conclusion of the postconviction hearing the trial judge observed as follows:

Gentlemen, I don't know how I could possibly not sustain the Motion for a New Trial in the case in view of all the

---

1. The trial judge granted an extension of time for filing an amended 29.15 which would carry the time past the limits of the rule. He then held that the allegations of the amended motion were time barred, admitting embarrassment but citing intervening decisions. We do not have to decide whether this ruling was correct.

2. The letter reads as follows:
   Dear James:
   Well, I got your letter and was glad to hear from you. Ray is doing okay. Here's that letter you needed. It took me this long to get it. I'll try and send you some money this weekend. It might not be much. I'll send you some money. The one that sent you a birthday card said, Hi. James, I love you, but I can't fill out those papers. I wish I could. I know that Truman done it but I don't want to lose my baby. But you shouldn't be there when he done it. We love you, always will. Take care. We love you and pray to God that you don't pay for something someone else done.
   Love,
   Flora and Raymond

heard (sic) things that happened to this letter.

I don't know whether it was trial strategy, but I don't recall that she discussed it with Mr. Wells that it was trial strategy.

He therefore sustained the 29.15 motion on the ground of ineffectiveness of counsel.

His explicit written findings included the following:

\* \* \* \* \* \*

(t) Movant was prejudiced by the ineffective assistance of his counsel in that Dorothy Hirzy never fully investigated the allegations by movant that there was a letter from Flora Hawlett to him stating that Truman Burkeen was the murderer.

\* \* \* \* \* \*

7. ... Hirzy claimed that she did not believe Movant's statements that Flora wrote a letter....

\* \* \* \* \* \*

12. Movant has produced the letter written by Flora Hawlett in his post-conviction proceeding in which she expressed regret that Movant was locked up for a crime he did not commit.

\* \* \* \* \* \*

The evidence presented to this court clearly establishes that the letter was readily available to Hirzy, yet she failed to take any reasonable steps to obtain it or present it at trial.

\* \* \* \* \* \*

The Court finds Hirzy's testimony at the motion for new trial and in her direct testimony at the evidentiary hearing more credible than the directly contradictory theory of a secret trial strategy....

\* \* \* \* \* \*

Flora's letter to Movant constituted substantial evidence which would support doubts in the testimony of Truman Burkeen and Flora Hawlett and support doubts in the accuracy of Movant's confession. It would have also bolstered the credibility of state witness McCray's testimony which conflicted with that of Burkeen and Hawlett.

\* \* \* \* \* \*

The state argues that the trial court, in ordering a new trial, misapplied the holding of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). It is particularly suggested that the defendant has not shown that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

It certainly cannot be said that the trial judge overlooked *Strickland.* His findings show that he was quite aware of the *Strickland* test and purported to apply it. The defendant's trial counsel, in her cross-examination, asserted considerations of trial strategy in not obtaining the letter, but the judge said pointedly that he did not believe her explanation. He considered the letter an important piece of evidence which any capable lawyer would like to have, and observed that she could have tried to get it after Hawlett testified. The failure to pursue a single important item of evidence may demonstrate ineffective assistance and prejudice sufficient to warrant a new trial. *Hayes v. State,* 711 S.W.2d 876 (Mo. banc 1986). This is an easier case than *Hayes,* in which we overturned the finding of the trial court.

The state simply argues that the trial judge made the wrong call on the facts. But we have often observed that the trial judge is in a better position to ascertain the possible effect of the impeaching letter than we are. Both eyewitnesses were possible suspects, and they and some other witnesses were of doubtful respectability. Hawlett's repudiation of the statements in the letter, and her assertion that she wrote it to get back at Burkeen for doing her wrong, instead of being rehabilitating, might further discredit her in the jury's eyes. The confessions may have been the state's strongest evidence, but the trial judge found that the letter might cast doubt on these. It is possible, if the eyewitnesses were impeached, that the defendant might elect to take the stand to disa-

vow the confessions. Another possibility is that the jury might believe that the defendant was not the only criminal actor. It is also important that the same judge presided at the trial and at the 29.15 hearing, and was thus better equipped to assess the strengths and possible weaknesses of the prosecution's case, including the confessions. We are not disposed to depart from our usual practice, so as to substitute our factual conclusions for his carefully considered determinations.

Our conclusion on the postconviction review makes it unnecessary to rule on the merits of defendant's appeal from the convictions and sentences. The prosecutor can consider the defendant's arguments in deciding whether to invite at retrial a recurrence of the several points of trial error asserted. *See State v. Wacaser,* 794 S.W.2d 190 (Mo. banc 1990). No error in instructions is evident. The points challenging the validity of Missouri's death penalty statutes have been repeatedly rejected.

The state concedes that the defendant was improperly sentenced for armed criminal action as a class X offender, because the enabling statute was not in effect at the time of the offense.[3] A similar error can be avoided on retrial.

The judgment in the 29.15 proceedings, granting a new trial, is affirmed. Wells' appeal from his convictions and sentences is dismissed as moot.

ROBERTSON, RENDLEN, HIGGINS, COVINGTON and HOLSTEIN, JJ., and WASSERSTROM, Senior Judge, concur.

BILLINGS, J., not sitting.

---

**3.** Mr. Judd's stabbing and death occurred on March 18, 1986. Section 558.019, RSMo 1986, defining and regulating class X offenders, became effective on January 1, 1987.