STATE of Missouri, Respondent,

v.

James E. BOYCE, Appellant.

James E. BOYCE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17667, 19211.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 17, 1994.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

A jury convicted James E. Boyce (Defendant) of robbery in the first degree and armed criminal action, §§ 569.020 and

571.015,[1] on May 16, 1991. Defendant was sentenced as a prior and persistent offender, §§ 558.016 and 557.036.4, RSMo Supp.1993, to consecutive terms of 25 years' and 20 years' imprisonment, respectively.

In his direct appeal (No. 17667), Defendant contends that the trial court erred in (1) denying his request for a mistrial based upon the State's failure to disclose that a rebuttal witness had previously identified Defendant as one of the armed robbers, (2) failing to sustain Defendant's objection to the State's peremptory strikes of two black persons, and (3) overruling Defendant's challenge for cause of venireperson Walker.

Defendant later filed a *pro se* motion to vacate his conviction and sentence pursuant to Rule 29.15. Thereafter, his counsel filed an amended motion. In No. 19211 Defendant appeals the denial of that motion after an evidentiary hearing. The appeals have been consolidated. Rule 29.15(*l*).

### No. 17667

The sufficiency of the facts to sustain Defendant's conviction is not here questioned. Therefore, a brief summary of the evidence will suffice. Around 3 a.m. on December 15, 1990, three black men, later identified as Defendant, Robert Bell, and Jerry Buck, entered the Wal–Mart store in Sikeston, Missouri, armed with guns and masked with panty hose covering their faces.

Upon entering the store one of the robbers grabbed Cynthia Ray, assistant Wal–Mart manager, and demanded money. Ray convinced him that no money was kept in the store after closing time. Two of the robbers then took Ray and another employee to the jewelry department where they broke into a display case and took numerous items of jewelry. One of the robbers struck Ray in the face after the jewelry was taken. While the jewelry was being taken, Brenda Stinnett, another Wal–Mart employee, was held in the front portion of the store by the third robber.

The three robbers fled with the stolen goods and later split up the jewelry between them. Defendant gave two of the stolen

birthstone rings to his girlfriend, Doris McCain. He told her that he had purchased the rings at the Cape Girardeau Wal–Mart store. She attempted to exchange the rings at the Charleston Wal–Mart store, but was unable to do so. The Charleston police later contacted McCain about the attempted exchange, and she gave them the rings. A Wal–Mart supervisor testified that the two rings were similar to rings taken during the robbery.

After Defendant was arrested, Sikeston Police Detective Gee questioned him. Defendant claimed that he bought the rings at a crap game and gave them to his girlfriend.

A few days later Robert Bell was arrested. He admitted that he committed the robbery with Defendant and Jerry Buck and led the police to many of the stolen items. Bell testified at trial to these facts and confirmed that all three men were armed. He testified that he was the man who grabbed Ray and, with Buck's assistance, took the jewelry. He indicated that Defendant was elsewhere in the store while he and Buck took the jewelry.

Defendant did not testify at trial but offered the testimony of two alibi witnesses. Their testimony, if believed, tended to show that Defendant was elsewhere when the robbery took place.

Defendant's first point claims the trial court erred in overruling his request for a mistrial during the State's rebuttal case because the State failed to disclose information that Brenda Stinnett identified Defendant to the Sikeston police as one of the robbers. We conclude this claim of error is based on Defendant's requested disclosure as provided by Rule 25.03(A)(1) although the legal file does not contain a copy of Defendant's disclosure request. However, the docket sheet shows Defendant filed a "Request for Disclosure." In addition, the transcript reveals that the prosecutor received the request because, in response to Defendant's request for a mistrial, he advised the court, "I furnished the Defendant everything we had."

In rebuttal, the State recalled Stinnett and she testified that she had identified Defen-

---

1. Statutory references are to RSMo 1986, unless otherwise indicated.

dant to the Sikeston police after viewing his photograph in the Sikeston newspaper a couple of days after the robbery. That information was not disclosed to Defendant prior to her testimony. Stinnett, endorsed as a State witness, had testified during the State's case in chief concerning the events of the robbery, but she was not questioned on her ability to identify Defendant as one of the robbers.

After Defendant presented his alibi defense, the prosecutor recalled Stinnett to rebut the alibi testimony. On cross-examination, Stinnett insisted that she called the police station and told someone that she could identify Defendant as one of the robbers. Stinnett thought she may have talked to Detective Hagen who had earlier investigated the Wal–Mart robbery. However, Hagen's notes, supplied to Defendant, made no reference to such a conversation.

Whether the state violated the rules of discovery rests within the sound discretion of the trial court. *State v. Engel,* 859 S.W.2d 822, 829 (Mo.App.1993). When a party has failed to comply with discovery rules, Rule 25.16 makes available certain sanctions which can be imposed by the court. Remedies such as granting a continuance, excluding the withheld evidence, or granting other appropriate relief are among the available choices.

Defendant chose to request a mistrial regarding the alleged discovery rule violation by the State. However, declaring a mistrial is a drastic remedy and should be employed only in the most extraordinary circumstances. *State v. Sidebottom,* 753 S.W.2d 915, 919–20 (Mo. banc 1988), *cert. denied,* 488 U.S. 975 (1988). Furthermore, the denial of a requested sanction is an abuse of discretion only where the admission of evidence or testimony results in a fundamental unfairness to the defendant. *State v. Castillo,* 853 S.W.2d 381, 384 (Mo.App.1993). "The notion of fundamental unfairness in turn is to be measured by whether the evidence or the discovery thereof would have affected the result of the trial." *Id.*

The instant case is similar to *State v. Robinson,* 832 S.W.2d 941 (Mo.App.1992), where, in rebuttal, the State was allowed to introduce defendant's statements to police officers which contradicted defendant's trial testimony. The report containing these statements had not been previously disclosed to defendant. In denying defendant's claim of surprise and discovery rule violation, the court said:

> Even if the trial court's admission of this evidence was in error, the court's denial of a requested sanction is an abuse of discretion only where admitting the evidence results in fundamental unfairness to the Defendant. *State v. Adams,* 791 S.W.2d 873, 878–879[15, 16] (Mo.App.1990). In this case it is highly unlikely that the outcome of the case was altered or that the trial was fundamentally unfair. The evidence was overwhelming. Defendant admitted involvement in the robbery to police officers. All four victims identified Defendant as the perpetrator of the robbery. In light of such strong evidence of guilt, it is hard to see how Defendant could have been prejudiced. *See Richardson v. State,* 719 S.W.2d 912, 916[7] (Mo.App.1986).

*Id.* at 945.

Here, the evidence against Defendant was overwhelming. His co-defendant, Robert Bell, testified that Defendant participated with him in the robbery. In addition to Stinnett, another Wal–Mart employee, Robert Deen, emphatically testified that he recognized Defendant as one of the robbers who held the employees at gunpoint at the front of the store. The inference is strong that Defendant gave his girlfriend two rings taken in the robbery soon after the event.

As said in *Robinson,* it is hard to see how Defendant could have been prejudiced in light of such strong evidence of guilt, and it is highly unlikely that the outcome of the case was altered by the admission of Stinnett's testimony. Assuming, without deciding, the admission of Stinnett's testimony was in error, we find no abuse of discretion because admitting the evidence resulted in no fundamental unfairness to Defendant. Point denied.

In his second point, Defendant contends that the trial court erred in failing to sustain his objection to the State's peremptory strike of two black venirepersons, Cordelia Boyd

and Patricia Brown, because the State exercised a discriminatory purpose in making the strikes. Defendant alleges that the State's proffered explanation for peremptorily striking the two black women, "because they both were related to men with considerable criminal troubles was merely a pretext as there was no testimony elicited during voir dire to support this excuse. . . ."

Defendant argues that "the State exercised a discriminatory purpose in removing said jurors" because the State "did not provide a sufficiently race neutral explanation" for doing so. Defendant bases his claim on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ We must affirm the trial court's denial of Defendant's *Batson* challenge unless this Court finds the decision of the trial court to be "clearly erroneous." *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). Defendant bears the burden of demonstrating that the decision of the trial court was clearly erroneous and that the prosecutor's explanations were pretextual and not the true reason for the use of the state's peremptory challenges. *Id.* at 63–64.

In *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), the Supreme Court enunciated anew the procedure for the trial court to follow when confronted by a *Batson* objection.

> First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

*Id.* at 939 (footnote omitted) (citations omitted). Defendant's efforts fail here because the record is devoid of any attempt by Defendant to show that the strikes were pretextual or that they were racially motivated. "If defendant believed the state's reasons were pretextual or that the state failed to strike similarly situated white jurors, defendant should make these arguments at trial and not for the first time on appeal." *State v. Prowell*, 834 S.W.2d 852, 856 (Mo.App.1992). "Those best qualified to determine the validity of the state's reasons are in the trial court. *State v. Jackson*, 809 S.W.2d 77, 81 (Mo.App. 1991). If the trial court and defendant were satisfied with the state's reasons, 'this court is hardly in a position to disagree.' " *Id.* As we understand his point, Defendant takes the position that the prosecutor's race-neutral explanations for the strikes were not supported by any evidence in the record, and therefore his explanation was pretextual. Certainly, this was Defendant's only argument to the trial court.

Clearly, "*Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's 'hunches' and past experience as long as the factors relied on are racially neutral." *State v. Robinson*, 832 S.W.2d 941, 944 (Mo.App.1992). *See State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). Obviously, the voir dire process does not provide a record revealing the prosecutor's past experience or his "hunches." Defendant cites no authority that the record must contain such information.

■ The trial judge must assess the prosecution's credibility when explaining why the challenged strikes were made. *Kempker*, 824 S.W.2d at 911. Defendant made no effort to convince the trial judge that the prosecutor's explanation was based on any incorrect information. Like the objective standards expressed by the prosecution in *Kempker*, the prosecutor here gave equally objective standards for striking the two black venirepersons even though his information came from his past experience in dealing with law enforcement.

■ The trial court ruled that the prosecutor articulated race-neutral reasons for each peremptory strike and found no *Batson* violation. The trial court noted that the prosecutor is privy to information from law en-

forcement officers which assists him in making strikes. The record supports the view that the prosecutor made his strikes because venirepersons Brown and Boyd were either married to or had several children by men who had "been in considerable felony trouble." These reasons are racially neutral. We determine that the trial court's denial of Defendant's *Batson* challenge is not clearly erroneous. Point II has no merit.

In the last point of his direct appeal, Defendant alleges that the trial court erred in failing to strike venireperson Skyla Walker for cause. Defendant claims that the court violated his right to a fair jury because he is entitled to a full panel of qualified venirepersons before making his strikes. This issue arose after Defendant's counsel observed Walker make a remark to bailiff Terry Stevens as the jury panel left the courtroom following voir dire. Stevens testified about the occurrence as follows:

THE COURT: What did she say?

TERRY STEVENS: She stated to me that she didn't, didn't wanna be here.

THE COURT: She didn't wanna be here?

TERRY STEVENS: Yeah. And laughed. She's an acquaintance of mine.

THE COURT: You know Mrs. Walker.

TERRY STEVENS: Yes.

THE COURT: Was that the extent of what she said to you?

TERRY STEVENS: Yes.

THE COURT: Did you respond to her in any way?

TERRY STEVENS: No, sir. I just chuckled to myself, more or less.

The trial court then denied Defendant's request to strike Walker for cause and his request to individually voir dire her. In denying Defendant relief, the trial judge characterized the remark as an off-hand statement and noted that it is not uncommon for a prospective juror to indicate that "I would rather not be here."

Defendant claims that Walker's remark indicated bias. He fails to explain how the remark indicates bias towards him anymore than towards the State.

The State argues that this assignment of error is precluded by § 494.480.4 which became effective on August 28, 1993, and provides, in part:

The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

Here, Walker was eventually stricken by Defendant's use of a peremptory strike and did not sit on the jury. Defendant argues that the statute should not be applied because it "is unconstitutional to the extent it eliminates appellant's ability to raise this claim of error, as Article II, Section 1 of the Missouri Constitution prohibits the legislature from exercising judicial power."

When a case involves the constitutional validity of a state statute, this Court does not have jurisdiction of the appeal. Mo. Const. art. V, § 3. Therefore, we must first consider whether this Court has jurisdiction to decide the constitutional challenge. "The mere assertion of a constitutional issue, however, does not deprive the court of appeals of jurisdiction unless the constitutional issue is real and substantial and not merely colorable." *State v. Clark*, 756 S.W.2d 565, 569 (Mo.App.1988) (citing *State v. Charity*, 637 S.W.2d 319, 321 (Mo.App.1982)). For reasons which follow we find that this Court has jurisdiction because Defendant's constitutional claim is merely colorable and not substantial.

Defendant's constitutional argument consists solely of the following sentence: "Article V, Section 1, vests the judicial authority of this state in 'a Supreme Court, and Court of Appeals, ..., and circuit courts.' Furthermore, Article II, Section 1 prohibits one branch of government (here, the legislature) from exercising power properly belonging to another branch of government (here, the judiciary)." Defendant does not further develop this argument with authority or rationale. In a similar case, the court in *State v. Ellis*, 853 S.W.2d 440, 447 (Mo.App.1993), deter-

mined that defendant's constitutional attack on the validity of a statute was merely colorable and not substantial. Therefore, this Court has jurisdiction.

■ Although § 494.480.4 was enacted after Defendant's trial, it has been consistently held that the statute is procedural in nature and its retroactive application does not constitute an *ex post facto* violation. *State v. Lawson,* 876 S.W.2d 770, 777 (Mo. App.1994); *State v. Quinn,* 871 S.W.2d 80, 81–82 (Mo.App.1994); *State v. Boyd,* 871 S.W.2d 23, 26–27 (Mo.App.1993); *State v. Wings,* 867 S.W.2d 607, 609 (Mo.App.1993); *State v. Simmons,* 865 S.W.2d 893, 894 (Mo. App.1993). The provisions of the statute therefore apply to the instant action and bar Defendant's claim of error. Point III is denied.

### No. 19211

Defendant presents one claim of error regarding the denial of his Rule 29.15 motion which is premised on a theory of ineffective assistance of counsel. He claims his defense counsel was ineffective for failing to call Mark Daniels as a defense witness who would have testified that Robert Bell was lying when he said Defendant was involved in the Wal–Mart robbery.

■ Appellate review of the trial court's action on a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j). The findings, conclusions, and judgment of the motion court are clearly erroneous only if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *State v. Thompson,* 835 S.W.2d 394, 400 (Mo.App.1992).

■ To prevail on his theory, Defendant must meet a two-prong test: (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that he was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). Both the performance and prejudice prongs of the test must be satisfied in order to prevail on a claim of ineffective assistance of counsel. *Id.*

■ Furthermore, a defendant must overcome the presumption afforded defense counsel that, under the circumstances, the challenged action might be sound trial strategy. *Thompson,* 835 S.W.2d at 400. As a general rule, the decision to call a certain witness is a matter of trial strategy and will not support a finding of ineffective assistance of counsel. *Id.*

Here, Mark Daniels testified at the motion hearing that he was incarcerated in the New Madrid County Jail for about seven or eight months in late 1990 or early 1991. Bell was in the same jail during part of that time period. Daniels testified that Bell told him Defendant was not involved in the robbery and that he implicated Defendant in order to get a lighter sentence. Daniels admitted that he had been convicted of robbery and forgery.

■ Defendant's trial counsel testified at the motion hearing that he represented Daniels in his robbery case that ended a "couple of months" before Defendant's trial commenced. He recalled that Daniels possibly "told me some things about Bell" and that "we did consider using Mark Daniels." In fact, defense counsel had a subpoena issued for Daniels, but Defendant and his counsel reached an agreement not to call Daniels. Defense counsel conceded that he influenced Defendant to reach this agreement at least in part because of his "serious reservations" about Daniels' "background" and his prior convictions.

Based on this testimony, the motion court determined that defense counsel decided not to call Daniels as a matter of trial strategy. The motion court found defense counsel's testimony credible, and we must defer to the motion court's determination on credibility of witnesses. *State v. Robinson,* 864 S.W.2d 347, 349 (Mo.App.1993). Review of the entire record does not leave us with a definite and firm impression that a mistake has been made. Therefore, Defendant's claim must fail.

The judgments of the trial court and the motion court are affirmed.

SHRUM, C.J., and FLANIGAN, J., concur.