STATE of Missouri, Plaintiff/Respondent,

v.

James E. BOYCE, Defendant/Appellant.

James E. BOYCE, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 63544, 66926.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 16, 1996.

**426**

Lew Kollias, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Beal, Assistant Attorney General, Jefferson City, for respondent.

REINHARD, Presiding Judge.

Defendant appeals after he was convicted by a jury for one count of first degree robbery, § 569.020, RSMo 1986, and one count of armed criminal action, § 571.015, RSMo 1986. The court sentenced him as a prior and persistent offender to concurrent prison terms of life imprisonment on each count. Defendant also appeals the denial of his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. We affirm.

1. Detective Ronald Ruess of the Festus Police

The evidence reveals that on December 18, 1990, Terry Sellers was working at the National Food Store (National) in Festus, Missouri. According to Sellers, at approximately 11:00 p.m., a man wearing a ski mask and carrying a shotgun said, "Get on the floor or I'll shoot you." The man then yelled at the other checkers and walked to the customer service area. Sellers notified an off-duty security guard of the robbery in progress.

Diana Hanger testified that she was working as a checker at National on the evening of the robbery. When her shift ended at approximately 11:30 p.m., she took her cash drawer to the customer service area to have the money placed in the store safe. Two men suddenly entered the area demanding money, and one of the men took money from Hanger's cash drawer.

Janet Compton testified that she was responsible for securing the money in the customer service area on the evening of the robbery. She recalled that a man jumped over a counter, demanded money, and pushed her. Another man joined him, and Compton suddenly saw a shotgun aimed at her head. Compton opened the store safe, and one of the men put the money in a bag and dragged her with him as he left the store. After the security guard threatened him, he pulled Compton outside, threw her on the ground, and ran away.

Dan Foster, a security guard for National, testified that while he was shopping on the evening of the robbery, one of the employees told him that a robbery was in progress. Foster subsequently saw a man with a gun and yelled, "Freeze." The man rushed for the door, and when another robber pointed his shotgun at Foster, Foster fired his weapon at him. The man with the shotgun jerked, and Foster thought that he had wounded him but was unsure. Foster later discovered a small hole and shattered glass in the door behind the robber with the shotgun, and he recalled that the bullet he fired was found on the floor.

Robert Bell testified that on December 18, 1990, he robbed National with Jerry Buck [1],

Department testified that Buck was pursued by

who carried a pistol into the store, and defendant, who carried a shotgun. After the robbery, Bell and defendant went to Bell's ex-girlfriend's house in Cape Girardeau, and Bell recalled that defendant told him that he had been shot in the hand during the robbery. Bell stated that he told the police about defendant's involvement in the robbery and received concurrent ten year prison terms after pleading guilty to charges stemming from the National robbery and an earlier robbery of the Wal–Mart store in Sikeston.

Brenda Ramsey, Bell's ex-girlfriend, testified that on the morning of December 19, 1990, Bell came to her house and told her that he and defendant had been in a shoot-out. While driving defendant to his friend's house, Ramsey noticed that he had his hand wrapped, and defendant told her that a bullet from the Festus shoot-out was still in his hand.

Detective Lieutenant Bob Gee of the Sikeston Department of Public Safety arrested defendant on December 27, 1990. He inquired about the bandage on defendant's hand, and defendant told him that a motor had fallen on it.

Doctor Mark Sever testified on behalf of defendant and recalled that he was on duty at the emergency room of the Missouri Delta Medical Center in Sikeston on December 27, 1990. He had no independent recollection of seeing defendant, but his records indicated that he treated him on December 27th. According to his records, Dr. Sever observed that defendant had a "small, old abrasion over the metacarpal phalangeal joint on the dorsal side of the hand." Dr. Sever further noted that "it was a healing abrasion" and estimated that the injury to the right long finger was between five and ten days old. An X-ray revealed a hairline fracture at the base of the finger and Dr. Sever concluded that defendant's hand injury was not caused by a gunshot wound.

We first address defendant's direct appeal. Defendant asserts the trial court erred in denying his request for a mistrial because a

reference to defendant's involvement in a prior robbery violated his right to a fair trial.

Defendant had been convicted of robbery and armed criminal action charges stemming from a robbery in the part of Sikeston located in New Madrid County, which occurred three days prior to the robbery in Festus, located in Jefferson County. The circumstances and alleged perpetrators were similar in both cases. Shortly before defendant's trial on charges of the Festus robbery, a post-conviction hearing had been held on defendant's motion to set aside his convictions of crimes committed during the Sikeston robbery. *See State v. Boyce*, 887 S.W.2d 447 (Mo.App.S.D.1994).

At trial the court granted, in part, defense counsel's motion *in limine* requesting that the court prohibit "any evidence of defendant's conviction for/involvement in the robbery of the Wal–Mart Store in Sikeston, MO." The court instructed the prosecutor not to inquire about defendant's alleged involvement in the December 15, 1990 robbery of the Sikeston Wal–Mart.

During the trial, Bell testified prior to Detective Gee and admitted that he was testifying as a part of a deal with the prosecutors of Cape Girardeau, New Madrid, and Jefferson Counties to recommend concurrent ten year sentences on all charges resulting from the Festus and Sikeston robberies. He admitted his convictions in both cases, stated the dates of the robberies, and asserted that he and Buck were involved in each crime. He recalled that he had known Buck and defendant for several years and stated that he contacted defendant on December 18, 1990, the day of the Festus robbery.

Detective Gee testified that he was conducting a criminal investigation regarding the December 15, 1990 robbery of the Wal–Mart in Sikeston and the December 18, 1990 robbery of the National store in Festus. When the prosecutor asked Gee how many individuals were involved in the Wal–Mart robbery, an objection by defense counsel was sustained by the court. The court also sus-

---

the police after the Festus robbery and ultimately killed in Illinois in a shoot-out with the Illinois

State Police.

tained defense counsel's objection to the prosecutor's inquiry about Detective Gee's investigation of the Sikeston robbery. The prosecutor then questioned Detective Gee about the arrest and interrogation of defendant. After a few questions along this line, defense counsel approached the bench and told the court that she believed the state was attempting to imply that defendant was involved in the Sikeston robbery. The prosecutor stated that he had not intended to make such an implication and indicated that he would not elicit evidence prohibited by the court.

After the discussion at the bench, the prosecutor continued to question Detective Gee about defendant's arrest. According to Detective Gee, defendant, who wore a bandage on his right hand at the time of his arrest, waived his Miranda[2] rights and denied any involvement in the Festus robbery. Detective Gee informed him that Bell had been arrested in Cape Girardeau and that he was investigating "the robberies". The court sustained defense counsel's objection to the testimony and instructed the jury to disregard the question and answer. Detective Gee then recalled that defendant indicated some interest in making a deal, and the detective told him that he would "get him a deal for a lesser sentence" if he discussed the Festus robbery. Detective Gee testified that when defendant told him to pursue the deal, he called the New Madrid County prosecutor. Defense counsel immediately objected and asked to approach the bench, where she argued that "there [was] no reason . . . New Madrid County should even be mentioned or discussed with the National robbery in Festus". Defense counsel then asked for a mistrial. The court sustained the objection, denied the request for a mistrial, and instructed the jury to disregard Detective Gee's answer.

The declaration of a mistrial is a drastic remedy that should be used only in the most extraordinary of circumstances. *State v. Montgomery*, 809 S.W.2d 47, 49 (Mo.App.1991). We will only consider whether the trial court's decision not to grant a mistrial was an abuse of discretion because the trial court is in a better position to evaluate the prejudicial effect on the jury. *Id.* A mistrial should be granted only when no other remedy can prevent prejudice to defendant. *State v. Crockett*, 801 S.W.2d 712, 716 (Mo.App.1990).

Here, Detective Gee's evidence of defendant's arrest and interrogation was an important part of the state's case. Detective Gee testified that he noticed defendant's hand injury and took him to Dr. Sever, who was defendant's sole witness at trial. Detective Gee could not hide the fact the he was an officer of the Sikeston Police Department. The court was extremely diligent in attempting to prevent the references to the robbery in Sikeston, and no direct evidence of defendant's involvement in that robbery was presented. Although Bell admitted his involvement in the Sikeston robbery, which Gee investigated, Gee's testimony never directly, obviously, or certainly proved defendant's involvement in that robbery. In any event, two crimes and their investigations may be so interrelated that it is impossible to completely exclude references to one in a trial of the other. *See State v. Brown*, 584 S.W.2d 413, 415 (Mo.App.1979), *State v. Wilson*, 755 S.W.2d 707, 710 (Mo.App.1988). Thus, we hold that the trial court did not abuse its discretion in failing to grant a mistrial.

In his appeal from the denial of his Rule 29.15 motion for post-conviction relief, the principal point in his oral argument, defendant contends his counsel was ineffective in failing to call several witnesses who would have testified that Bell told them that his implication of defendant was a lie he told in order to get a favorable deal with the state. According to defendant, the witnesses were Steve Harris, a public defender who represented defendant in his Sikeston robbery post-conviction hearing, Kennard Jones, who was Harris' law clerk, and Mark Daniels and Barry Stevens, who were fellow inmates of Bell's. The failure to call Daniels as a witness at the trial on charges stemming from the Sikeston robbery was the basis for movant's unsuccessful appeal from the denial of

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

his New Madrid County post-conviction motion in *State v. Boyce, supra.*

■ Our review is limited to determining whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 24.035(j); *Vernor v. State*, 894 S.W.2d 209, 210 (Mo.App.E.D.1995). Such findings and conclusions are clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made. *Vernor*, 894 S.W.2d at 210.

■ Justice O'Connor, speaking for the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067–68, 80 L.Ed.2d 674 (1984), stated that to obtain relief on an ineffective assistance of counsel claim, a movant must show counsel's performance was deficient and the deficient performance prejudiced his defense. A movant must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. *Id; Childress v. State*, 778 S.W.2d 3, 6 (Mo. App.1989). The motion court, and this court, may proceed directly to the issue of prejudice without first determining whether counsel's conduct was deficient. *State v. Clay*, 783 S.W.2d 419, 420–21 (Mo.App.1989). The movant has the burden of proving his asserted grounds for relief by a preponderance of the evidence. *Eddes v. State*, 776 S.W.2d 463, 465 (Mo.App.1989).

■ At the evidentiary hearing, Steven Harris, a public defender, testified that he represented defendant in a post-conviction proceeding in New Madrid County after defendant was convicted of charges stemming from the robbery of the Sikeston Wal–Mart. According to Harris, in March 1992, Bell told him in a telephone conversation "that Mr. Boyce was not involved in the New Madrid robbery or the Jefferson County robbery." Harris told defense counsel about the statement prior to the Jefferson County trial.

Defense counsel admitted that Harris told her about his conversation with Bell, but she also recalled that Harris had not put Bell on the stand at the post-conviction motion hearing in New Madrid County. Defense counsel asserted that she did not want evidence of defendant's conviction for the Sikeston robbery to enter into the trial of the Festus robbery. She then discussed her failure to cross-examine Bell about his statements to Harris:

I considered it and I didn't, I can't really say it was a strategy decision not to, I just, I thought about it and I didn't do it, and I can't really tell you why I didn't. Looking back I am thinking, you know, it would not have hurt.

The trial court found that defense counsel was not ineffective and that defendant was not prejudiced by any alleged deficient performance.

Here, defense counsel's primary strategy was to shield the jury from defendant's participation in the Sikeston robbery. To use Harris or his law clerk as witnesses might have destroyed that strategy because their relationship to defendant's New Madrid County post-conviction proceeding might have been disclosed to the jury. Trial counsel thoroughly exposed the plea bargain in which Bell, facing four life sentences, received ten years' imprisonment. Bell's motive for testifying was quite apparent.

However, Bell's testimony was not the only evidence supporting this conviction. Ramsey testified that she noticed defendant's hand injury shortly after the Festus robbery occurred and recalled that defendant admitted to her that he had injured it while he, Bell, and Buck were in a shoot-out. Detective Gee also saw the injury when he arrested defendant, and defendant's witness, Dr. Sever, testified that when he examined defendant's hand on December 27, 1990, the injury was five to ten days old, a time frame encompassing the December 18, 1990 Festus robbery. Furthermore, Dr. Sever's testimony that defendant had not suffered a gunshot wound is not inconsistent with Foster's testimony that the bullet, which was found on the floor, had shattered the glass in a door.

■ Defendant relies upon *State v. Wells*, 804 S.W.2d 746 (Mo. banc 1991), in which the defendant asked his trial counsel to obtain a letter sent to him by a witness admitting that her implication of the defendant was a lie. The letter had been given to his prior public

defender, but the attorney who tried the case failed to obtain it. *Id.* at 747. The *motion court* found that the counsel's action was not trial strategy and granted a new trial. *Id.* at 748. On the appeal by the state, Judge Blackmar, speaking for our Supreme Court, stated:

> It certainly cannot be said that the trial judge overlooked *Strickland.* His findings show that he was quite aware of the *Strickland* test and purported to apply it. The defendant's trial counsel, in her cross-examination, asserted considerations of trial strategy in not obtaining the letter, but the judge said pointedly that he did not believe her explanation. He considered the letter an important piece of evidence which any capable lawyer would like to have, and observed that she could have tried to get it. . . .

> The state simply argues that the trial judge made the wrong call on the facts. But we have often observed that the trial judge is in a better position to ascertain the possible effect of the impeaching letter than we are. . . . It is also important that the same judge presided at the trial and at the 29.15 hearing, and was thus better equipped to assess the strengths and possible weaknesses of the prosecution's case. . . . We are not disposed to depart from our usual practice, so as to substitute our factual conclusions for his carefully considered determinations.

As in *Wells,* the motion court judge here was the same judge that presided over the trial. Following *Wells,* we strongly rely upon the motion court's determination and conclude that defendant was not prejudiced by defense counsel's failure to call Steven Harris at trial.[3]

 Defendant also asserts defense counsel was ineffective for failing to cross-examine Bell about an unnotarized letter in which Bell claimed that he fabricated his implication of defendant. He further contends that he was prejudiced by defense counsel's failure to object to repeated testimony that defendant participated with Buck and Bell in the robbery of the Sikeston Wal–Mart. At the evidentiary hearing, defense counsel explained that she strategically chose not to present the letter because she doubted its authenticity. Defense counsel also recalled that she did not repeatedly object to Officer's Gee's testimony about defendant's involvement in the Sikeston Wal–Mart robbery:

> My feeling at the time, you know, this officer is making what I considered not—I don't want to say they were subtle references to the New Madrid case, but they were not blatant either. I mean he was very skillful in, you know, trying to sneak some of the references in. . . . I just didn't want to blow the whole thing up in front of the jury; want to alert the jury that I felt this is harmful evidence.

The law is well settled that trial strategy does not provide a basis for an attack on the effectiveness of trial counsel. *Lashley v. State,* 721 S.W.2d 31, 34 (Mo.App.1986). The motion court's finding that movant failed to establish prejudice is not clearly erroneous.

Judgment affirmed.

KAROHL and DOWD, JJ., concur.

---

**3.** Jones, Daniels, and Stevens did not testify at the evidentiary hearing. The motion court is not required to believe defendant as to what they would have said. *Tubbs v. State,* 745 S.W.2d 739, 740 (Mo.App.1987), *State v. Vega,* 875 S.W.2d 216, 220 (Mo.App.E.D.1994). Thus, the motion court's finding that defendant failed to prove he was prejudiced by defense counsel's failure to call Jones, Daniels, or Stevens is not clearly erroneous.