STATE of Missouri, Plaintiff/Respondent,

v.

Darryl CAGE, Defendant/Appellant.

Darryl CAGE, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 68238, 70723.

Missouri Court of Appeals,
Eastern District,
Division One.

May 20, 1997.

David Simpson, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Fernando Bermudez, Assistant Attorney General, Jefferson City, for respondent.

REINHARD, Judge.

Defendant appeals after he was convicted by a jury of first degree assault, § 565.050, RSMo 1986, armed criminal action, § 571.015, RSMo 1986, and first degree trespass, § 569.140, RSMo 1986. The court found movant to be a prior and persistent offender and sentenced him to the following concurrent prison terms: twenty years for assault, twenty years for armed criminal action, and six months for trespass. Defendant also appeals the denial of his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. We affirm.

The sufficiency of the evidence is not at issue. On October 11, 1993, defendant attempted to enter Denise Nelson's apartment while only her son, Charles Chism, was home. Defendant and Denise[1] had recently ended a relationship. Around 10:30 p.m., Denise arrived home, and at approximately 1:15 a.m., defendant kicked in the back door and entered the apartment. Charles testified that he threw a pot of hot water and bleach on defendant and then ran out of the apartment to call the police. Defendant repeatedly stabbed Denise with a knife. Charles subsequently returned to the apartment and struck defendant with a wooden board, a chair, and a skillet. The police found Denise on the kitchen floor. She underwent surgery and was hospitalized for four or five days.

When the police later questioned defendant, he stated: "Denise and I got into it and she threw bleach and water on me. Her kid hit me with a sledgehammer. Yeah, I stabbed her. I think I got her good, they told me twenty-two times." At trial, defendant testified that he entered the apartment through an unlocked door and that he was there to collect his belongings. He alleged that when Denise "was comin' towards" him with hot water and bleach, defendant "picked up a knife and [he] stuck her with it."

On appeal, defendant contends:

The trial court erred in denying [defendant's] request to replace juror Black with an alternate after he admitted knowing Charles Chism in violation of his right to a fair and impartial jury under Article I, Section 22(a) of the Missouri Constitution, because Black did not admit knowing Charles when he was asked during voir dire, but he admitted knowing him during trial because he taught Sunday School and attended the same church as Alfred Chism, who is Charles's grandfather, and Denise's father, and the concealment of this material information deprived [defendant] of the opportunity to exercise his challenges in an intelligent and meaningful manner.

During voir dire, the state's attorney said, "Denise Nelson and her son Charles Chism will be testifying. Does anyone know either one of those individuals?" None of the venire panel, including Black, responded. Following Charles' testimony, Black asked to speak with the judge. Black indicated that after voir dire, he noticed Alfred Chism, a deacon at his former church, in the lobby of the courtroom. Black did not talk with Alfred at that time. According to Black, he "just waved to him ... and [Alfred] waved back but we didn't talk to each other." After Charles' testimony, Black realized Alfred and Charles had the same last name and "that they might be related." Black stated, "I don't know this young man and I don't know how he may be related to Alfred Chism but I thought he might be because I saw [Alfred] down here yesterday."

The prosecutor stated that Alfred was the grandfather of Charles and the father of Denise. According to the prosecutor, Alfred was "in the witness room ... as moral support for his daughter." The court then thoroughly questioned Black. While attending the same church, Black was a Sunday School teacher, and Alfred was the superintendent of the Sunday School. They saw one another every Sunday and at meetings held a "couple times a month ... to prepare to teach the Sunday School class." Black said "I didn't know him—you know, I know him well enough that we would talk but we weren't—we didn't socialize together. It was just more or less through the church." Black and Alfred have not spoken since Black left that church, on good terms, in 1991. Furthermore, Black said that he did not know Denise or Charles. Black unequivocally said his prior acquaintance with Alfred would not affect his ability to judge the case fairly.

The trial court found that Black was "perfectly honest" and "he was just giving an honest response based on additional information now that he saw Mr. Chism out in the hall and recognized him." The trial court, guided by Black's answers and demeanor,

---

1. Some of the witnesses are referred to by their first names for clarity, and no disrespect is intended.

concluded there was "no bias or prejudice on the part of [Black]."

We first note that Black never indicated that he knew either Charles or Denise. Defendant incorrectly alleges that Black "did not admit knowing Charles when he was asked during voir dire, but he admitted knowing him during trial." Black asserted that he was acquainted with Alfred, but he never said that he knew Charles or Denise. Therefore, this case does not involve the issue of either intentional or unintentional failure to disclose information during voir dire.

Defendant's motion for a new trial more accurately states the issue here. The motion provides:

> The Court erred in denying defendant's motion to remove juror number 5, James Black. Mr. Black realized after trial began that the victim's father Alfred Chism was the deacon of his Church. He realized this on the second day when Mr. Alfred Chism who was present for the trial waved to Mr. Black. Mr. Black waved back and smiled. There was an alternate available to replace Mr. Black. Mr. Black ultimately was the foreman. Mr. Chism was present from that point on. Mr. Black was therefore biased and prejudiced. The taint of partiality should have been removed and the removal would not have compounded the problem.

Section 494.485, RSMo Supp.1993, provides for the use of alternate jurors. According to this section, "Alternate jurors ... shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." § 494.485, RSMo Supp.1993.

Defendant relies upon *State v. Brusatti*, 745 S.W.2d 210 (Mo.App. E.D.1987). Similar to the case at hand, a juror in *Brusatti* realized something after the trial had begun and then brought it to the court's attention. *Id.* at 211. In *Brusatti*, the juror told the court, "The officer [that just testified] is my cousin. I did not realize he was on the force. He is my first cousin and I have not seen him in three years...." *Id.* When the prosecutor asked whether she would give more credence to his testimony, she replied, "No. In

fact, it would all be the other way." *Id.* The prosecuting attorney then asked the court to replace the juror with an alternate. *Id.* After further questioning, the court dismissed the juror, and an alternate juror joined the jury panel. *Id.* at 212. On appeal, the defendant claimed that the trial court erred in replacing the juror. *Id.* at 211. This court held, "Here, a juror found out she was the first cousin of a principal witness and determined that she might be prejudiced against his testimony. We can find no abuse of discretion on the part of the trial court, nor is there any real claim of prejudice." *Id.* at 213.

■ If this case had been tried without an alternate juror, and defendant had moved for a mistrial upon learning of the acquaintance between Black and Alfred, the trial court's denial of the motion for mistrial would certainly not have been an abuse of discretion. After reviewing the entire record in this case, we find that the trial court did not abuse its discretion in refusing to substitute an alternate juror for Black.

Defendant also contends that the motion court erred in denying his post-conviction motion because he received ineffective assistance of counsel. Defendant alleges that "his attorney's decision to not strike Black from the venire panel was unreasonable trial strategy which resulted in prejudice."

■ Our review is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15; *State v. Boyce*, 913 S.W.2d 425, 429 (Mo.App. E.D.1996). Such findings and conclusions will be found clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made. *Boyce*, 913 S.W.2d at 429.

■ To prevail on a claim of ineffective assistance of counsel, a movant must show, by a preponderance of the evidence, that counsel's performance was deficient and that the deficient performance prejudiced the movant's defense. *Eddes v. State*, 776 S.W.2d 463, 464 (Mo.App. E.D.1989) (*citing Strickland v. Washington*, 466 U.S. 668, 687,

104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). To prove deficient performance, a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *State v. Henderson,* 826 S.W.2d 371, 378 (Mo.App. E.D.1992). Prejudice is shown when there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id.* If a movant fails to show either deficient performance or prejudice, the court need not address the other component. *State v. Mueller,* 872 S.W.2d 559, 566 (Mo.App. E.D.1994).

During voir dire, Black said that he served on a jury six or seven years earlier. Defendant contends that Black was "the foreperson of a jury that convicted another defendant," yet the state alleges Black "served on an earlier jury that did not convict the defendant." Black testified, however, that the jury reached a verdict in a criminal case as to one count but did not reach a verdict regarding the other.

Black later raised his hand and said he would like to serve on the jury because he is "fascinated by courtroom procedures." When the state asked whether the gender of the initial aggressor in a self-defense case mattered, Black responded:

I think that in certain some cases it would matter the way that you would respond. What I'm saying is I mean, I think if a person has a gun at you, they can do equal harm to you, you know, whether a man or a woman. But I think in most cases because I believe in general men are stronger than women that a woman probably could not inflict the harm on a man that another man could. So it depends if they have a weapon or how you know—I mean, I'm saying it matters to me as far as gender is concerned depending on what the person was doing because I believe that men generally are stronger than most women. So a woman probably couldn't unless she had a weapon of some type.

Black further stated, "most people will tend to agree that men are stronger than most women. If a woman doesn't have a weapon th[en] she probably is not going to do the damage to a man hitting him that anoth-er man would do." When the public defender later asked Black about the burden of proof, he responded, "a person is innocent until proven guilty. If I were to answer right now I would have to say innocent because [the state] hasn't presented any evidence to prove him guilty."

At the evidentiary hearing, defendant's trial counsel testified that Sue McGraugh, an experienced county felony attorney, second chaired the trial. Although his initial reaction was to strike Black, McGraugh thought he would be a good juror and therefore, defense counsel "deferred to her judgment." Defense counsel testified that the matter was discussed for approximately five minutes. They knew defendant would testify that Denise "was the aggressor ... and that he had been attacked by at least hot water." The two attorneys also considered the advantage of striking Black versus the other venirepersons.

The motion court found that "there was no basis for striking Mr. Black for cause and the record indicates this was a matter that was discussed and evaluated." In addition, the motion court stated that "as noted by trial counsel, [defendant] was to testify at trial that Denise Nelson threw boiling water on him."

 Trial counsel's removal of a juror is a matter of reasonable trial strategy. *See State v. Jones,* 916 S.W.2d 460, 461 (Mo.App. E.D.1996). Trial strategy does not provide a basis for an attack on the effectiveness of trial counsel. *Boyce,* 913 S.W.2d at 430. We have reviewed the record and find the findings and conclusions of the motion court are not clearly erroneous.

Judgment affirmed.

DOWD, P.J., and GARY M. GAERTNER, J., concur.