STATE of Missouri, Plaintiff–
Respondent,

v.

Charles W. SULLIVAN, Defendant–
Appellant.

Charles SULLIVAN, Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

Nos. 19834, 20769.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 21, 1996.

Motion for Rehearing or Transfer
Denied Dec. 13, 1996.

Application to Transfer Denied
Jan. 21, 1997.

Tim Hogan, St. Louis, Marc B. Fried, Hillsboro, for Charles Sullivan.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, Jefferson City, for State.

BARNEY, Presiding Judge.

Following a jury trial, Charles Sullivan (Defendant) was convicted of possession of a controlled substance with intent to distribute in violation of § 195.211[1]. He was found by the trial court to be a prior and persistent drug offender, §§ 195.275 and 195.291.1 and .2, and sentenced to ten years in the Department of Corrections without eligibility for probation, parole, or release except by act of the Governor.

Defendant, Martin Whiteside and Wayne Cordia were boating on Lake Wappapello when they were stopped by Officer Donald Carnahan of the Missouri Water Patrol. Although the boat was owned by Mr. Cordia, Defendant was driving. Officer Carnahan testified that he stopped the boat after observing one of the passengers riding on the "gunnel," or side of the boat, in violation of state law. Officer Carnahan obtained identification from all three individuals and requested the registration papers. At this time he discovered that the owner of the boat was Mr. Cordia. Officer Carnahan issued summonses for riding on the gunnel of the boat and for not having the registration papers on board.

He then initiated a computer check on the occupants. Based upon the information he received from the computer check, he requested permission from Defendant to search the boat. Defendant gave his consent. Officer Carnahan discovered two bags of marijuana. No other drug paraphernalia was found on the boat. All three men were arrested.

The charges against Mr. Whiteside were dropped in exchange for his cooperation with the State. Mr. Whiteside testified that approximately one week after the arrest, all three men met to discuss the situation. During the meeting, Defendant told Mr. Whiteside that he put the marijuana in the boat with the intent of "giving it back" to Mr. Cordia.

Defendant raises eleven points on direct appeal in Case No. 19834. Defendant also appeals from the denial of his Rule 29.15[2] Motion in Case No. 20769. The appeals were consolidated.

### Case No. 19834—Direct Appeal

In his direct appeal, Defendant alleges that the trial court erred: 1) in trying Defendant on the charge of possession with intent to distribute as such statutes are unconstitutionally vague and overbroad; 2) in overruling Defendant's objection to the admission of evidence as the State failed to reasonably account for the chain of custody; 3) in ruling that Defendant had no standing to challenge the search of the boat; 4) in denying Defendant's request for a continuance and/or to strike the testimony of Mr. Whiteside for the reason that the witness failed to appear at his deposition; 5) in overruling Defendant's motion for judgment of acquittal at the close of the State's case and for new trial as there was insufficient evidence to establish possession of a controlled substance; 6) in overruling Defendant's motion for judgment of acquittal at the close of the State's case as there was reasonable doubt as to Defendant's intent to possess or distribute a controlled substance in Wayne County; 7) in overruling Defendant's motion for judgment of acquittal at the close of the State's case as there was reasonable doubt that there were more than five grams of marijuana seized from Defendant; 8) plainly when it failed to declare a mistrial, *sua sponte,* when Officer Carnahan testified to Defendant's post-*Miranda* silence; 9) plainly when it failed to declare a mistrial, *sua sponte,* when the State improperly commented on Defendant's failure to

---

1. All statutory references are to RSMo Cum. Supp.1992, unless otherwise specified.

2. All rule references are to Missouri Rules of Criminal Procedure (1995) unless otherwise specified.

testify; 10) in sentencing Defendant as a prior and persistent drug offender; and 11) in sentencing Defendant to a ten year term without eligibility for probation, parole or release except by act of the Governor as the punishment is disproportionate to any harm suffered by the State.

## I.

■ In his first point, Defendant alleges that the statute under which Defendant was tried is unconstitutionally vague and overbroad in that it failed to put Defendant on proper notice that his conduct was illegal and it failed to adequately define what conduct is to be prevented.

■ If this constitutional challenge has been preserved for review, this Court does not have jurisdiction and the appeal must be transferred to the Missouri Supreme Court. *State v. Roberds,* 820 S.W.2d 621, 622 (Mo. App.1991); *State v. Perkins,* 680 S.W.2d 331, 334 (Mo.App.1984). "[O]ur Supreme Court has exclusive original appellate jurisdiction in all cases involving the validity of a statute of this state." *Perkins,* 680 S.W.2d at 334; *see also* Mo. Const. of 1945., art. V, § 3 (1982).

■ "To preserve a constitutional question for review four actions must occur. First, the matter must be raised at the first opportunity; second, the sections of the Constitution claimed to be violated must be specified; third, the point must be preserved in the motion for new trial; and fourth, it must be adequately covered in the briefs." *Roberds,* 820 S.W.2d at 622; *see also State v. Root,* 820 S.W.2d 682, 685 (Mo.App.1991).

■ Defendant first challenged the constitutionality of § 195.211 in his Motion for Judgment of Acquittal or New Trial filed on April 27, 1994, after Defendant's trial had concluded. "A constitutional question is waived if not raised at the earliest opportunity." *State v. Plummer,* 860 S.W.2d 340, 351 (Mo.App.1993). This claim was readily apparent to Defendant far in advance of trial, yet no allegation of unconstitutionality was raised until after Defendant had been found guilty. As this constitutional challenge has not been preserved for review, transfer to

the Missouri Supreme Court is not necessary. Point One is denied.

## II.

■ In his second point Defendant asserts that the trial court erred in overruling his objection to the admission of physical evidence as the State failed to reasonably account for the chain of custody. For the reasons that follow, this claim must also fail.

At trial, Defendant asserted there was a problem in the chain of custody. He stated that one of the individuals, Pamela Johnson, shown by the crime laboratory records to have had possession of the evidence, was not in court to testify that she did, in fact, handle the substance. On appeal, Defendant seeks to challenge the entire chain of custody of State's Exhibit 1.

■ "It is within the discretion of the trial court to determine whether a chain of custody has been sufficiently established before allowing the admission of physical evidence." *State v. Grisby,* 811 S.W.2d 488, 489 (Mo.App.1991). The evidence must provide reasonable assurance that the exhibit sought to be introduced is the same and in like condition as when received. *State v. Fels,* 741 S.W.2d 855, 857 (Mo.App.1987). "The state is not required to account for the hand to hand custody of evidence under the reasonable assurance standard, nor is it required to exclude every possibility that the evidence had been disturbed." *Id.* Moreover, "[c]hain of custody of an exhibit is irrelevant where the exhibit is positively identified at trial." *State v. Gustin,* 826 S.W.2d 409, 417 (Mo.App.1992); *Fels,* 741 S.W.2d at 857.

The State elicited testimony from several different witnesses that illustrated the chain of custody. Officer Carnahan testified that on May 29, 1993, he seized the marijuana in question and placed it in a plastic bag with an evidence sticker. He kept the marijuana with him in his briefcase as he processed Defendant and the two other individuals. He then transported the evidence to the Doniphan Police Department. Officer Talburt, the evidence officer, testified that he received the exhibit from Officer Carnahan at the

Doniphan Police Department and placed the exhibit in the evidence locker. Officer Talburt was the only individual with access to the locker.

On June 18, 1993, Officer Talburt retrieved the evidence from the locker and transported it to the Southeast Missouri Regional Crime Laboratory. It was signed in by Pamela Johnson, a chemist at the laboratory, who then placed the evidence in an evidence locker. The substance was tested that same day by Dr. Robert Briner, the director of the laboratory, and then returned to the locker.

Officer Talburt checked the exhibit out from the laboratory on October 28, 1993, and turned it over to Officer Carnahan for Defendant's preliminary hearing. The evidence was then returned the same day to the evidence locker and was not removed again until trial.

Not only did the State present testimony that provided a reasonable assurance that the chain of custody for State's Exhibit 1 was credible, but Officer Carnahan positively identified State's Exhibit 1 as the marijuana he seized in the search of the boat. Therefore, Point Two has no merit.

### III.

In his third point, Defendant's claim of error is twofold. First, he asserts that the trial court erred in finding that Defendant lacked standing to challenge the alleged consensual search of the boat. Secondly, he claims the trial court erred in overruling Defendant's objections to the validity of the search.

For the reasons that follow, we find that Defendant lacked standing to challenge the search and therefore, we need not consid-

er Defendant's second complaint concerning the validity of the search.

We recognize that the search in the present appeal is that of a boat and not an automobile. However, because watercraft are similar to automobiles in that both are inherently mobile, the exceptions to the warrant requirement applicable to automobiles logically apply to boats as well.[3]

Defendant states in his brief that "[a] criminal defendant has automatic standing to challenge a search where the same possession needed to establish standing is an essential element of the crime charged." However, this "automatic standing rule" is no longer the law in Missouri. *State v. Martin,* 892 S.W.2d 348, 351 (Mo.App.1995). "[T]he automatic standing previously afforded to those charged with possessory offenses to challenge the constitutionality of a search and seizure has been abrogated." *State v. Darrington,* 896 S.W.2d 727, 730 (Mo.App. 1995). " 'The mere status of being a passenger in a vehicle does not accord the passenger a legitimate expectation of privacy in the vehicle entitling him to assert a Fourth Amendment challenge to the search of the vehicle.' " *Martin,* 892 S.W.2d at 352. A person may only avail themselves of a Fourth Amendment protection if they had a legitimate expectation of privacy in the place or thing searched. *Darrington,* 896 S.W.2d at 730. "[A] defendant's mere possessory interest in an automobile provides an insufficient basis on which to base a legitimate expectation of privacy in the contents of the vehicle." *Id.*

Although Defendant was operating the boat, he was not the owner of the boat and as such he had no expectation of privacy in the boat and no standing to challenge the search.

---

3. We find no Missouri case dealing with warrantless searches of watercraft. However, federal law contains many cases holding that boats should be treated the same as automobiles for the purpose of determining whether a warrantless search is reasonable. *See United States v. Lingenfelter,* 997 F.2d 632, 640–41 (9th Cir.1993) (holding that inherent mobility of boat would have made it difficult to detain once it was placed in the water and therefore, warrantless search was justified); *United States v. Maybusher,* 735 F.2d 366, 372–73 (9th Cir.1984) *cert. denied* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783

(1985) (applying automobile exception to seagoing vessels); *Blair v. United States,* 665 F.2d 500, 506 (4th Cir.1981) (holding that exigent circumstances arising out of boat's mobility justified search without a warrant); *United States v. Block,* 483 F.Supp. 1296, 1300–01 (D.Mass.1980) (holding that search of boat was constitutionally valid as it was within the 'automobile exception'). *Cf United States v. Nasworthy,* 710 F.Supp. 1353, 1356 (S.D.Fla.1989) (holding that warrantless search was not justified as there was no exigent circumstance where boat was on its trailer and within control of authorities).

We find no plain error. Point Three is denied.

## IV.

■ In Point Four, Defendant seeks review of the trial court's denial of defense counsel's request for a continuance, or in the alternative, to strike the State's witness, Martin Whiteside. Mr. Whiteside, a passenger on the boat arrested with Defendant, testified as a witness for the State. Defendant attempted to take his deposition prior to trial. The transcript reveals that Mr. Whiteside was subpoenaed but the notice failed to designate the time at which he was to appear.[4] Defendant claims Mr. Whiteside knew the time, date and place at which he was to appear as defense counsel had spoken with Mr. Whiteside and informed him of the time. However, as a result of the faulty subpoena, Mr. Whiteside's attorney advised him not to appear at the deposition.

Defendant complains that because Mr. Whiteside failed to appear at the deposition, he was prevented from learning about Mr. Whiteside's criminal history, motives for cooperation with the State and the nature of any charges dropped by the State. Defendant asserts that Mr. Whiteside should have been stricken as a witness for the State because the State "failed to make adequate response to defendant's lawful discovery requests in this case." Defendant claims his right to meaningful discovery was violated and he was thereby prejudiced.

■ "The basic object of the discovery process in criminal proceedings is to permit defendant a decent opportunity to prepare in advance of trial and avoid surprise, thus extending to him fundamental fairness which the adversary system aims to provide." *State v. Scott,* 647 S.W.2d 601, 606 (Mo.App.1983), *cert. denied* 490 U.S. 1111, 109 S.Ct. 3169, 104 L.Ed.2d 1031 (1989). "The standard for reviewing a claim that defendant was denied meaningful discovery is whether the trial court abused its discretion in such a way as to result in fundamental unfairness." *State v. Mease,* 842 S.W.2d 98,

108 (Mo. banc 1992), *cert. denied* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

This is not a situation where the State has impeded the discovery process by failing to identify a witness or in failing to make a witness available for deposition. In fact, there is nothing in the record to demonstrate that the State had custody of Mr. Whiteside at the time that the deposition was scheduled nor does it appear that the State had any ability to compel his appearance. The failure of the witness to appear was the result of the faulty subpoena served upon Mr. Whiteside by the defense. As the non-occurrence of the deposition was not the fault of the State, the trial court was justified in refusing to strike Mr. Whiteside's testimony. *See Mease,* 842 S.W.2d at 107–08.

■ Defendant also complains that the trial court erred in refusing to grant a continuance so that Mr. Whiteside's deposition could be taken. Defense counsel requested a continuance during the pre-trial hearing on the morning of trial. The request was denied. The trial court did, however, allow defense counsel to meet with Mr. Whiteside during a recess of the court.

■ "The decision to grant or deny a continuance is within the sound discretion of the trial court." *State v. Menteer,* 845 S.W.2d 581, 584 (Mo.App.1992). "A very strong showing is required to prove abuse of that discretion, with the party requesting the continuance bearing the burden of showing prejudice." *Id.* Defendant has failed to show that he was prejudiced by the denial of the request for a continuance.

The original deposition was scheduled to occur approximately six weeks before trial. After Mr. Whiteside failed to appear due to the faulty subpoena, defense counsel made no attempt to reschedule the deposition even though there was ample opportunity to do so. Additionally, the transcript reveals that Mr. Whiteside testified at the preliminary hearing and therefore, the content of his testimony was apparent to Defendant. Finally, the trial judge granted defense counsel an opportunity to speak with Mr. Whiteside during a

---

4. Although we have not been supplied with a copy of the subpoena, it was stipulated by both sides that the subpoena served upon Mr. Whiteside did not indicate a time for him to appear.

trial recess. Counsel stated that outside of taking his deposition, he had spoken with the witness for as much time as he needed. Defendant has failed to show that the trial court abused its discretion in denying the request for a continuance. Point Four is denied.

## V.

Defendant's fifth, sixth and seventh points of error are related. In all points he asserts the trial court erred in overruling his motion for judgment of acquittal and for new trial.

In his fifth point, he claims there was insufficient evidence to establish that Defendant had possession of a controlled substance as he was not standing near the marijuana when it was found and he was not the owner of the boat.

"In assessing a challenge to the sufficiency of the evidence, the evidence, together with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict and evidence and inferences contrary to the verdict are ignored." *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc 1991), *cert. denied* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). This Court does not weigh the evidence but instead determines whether there was sufficient evidence from which reasonable persons could have found Defendant guilty. *Id.; see also State v. Villa–Perez*, 835 S.W.2d 897, 900 (Mo. banc 1992).

"To sustain defendant's conviction the State must have established that defendant knowingly and intentionally possessed a controlled substance." *State v. Ray*, 747 S.W.2d 765 (Mo.App.1988). Possession of a controlled substance may be proved by circumstantial evidence from which knowledge may be inferred. *Villa–Perez*, 835 S.W.2d at 900. Possession must be intentional, although it can be actual or constructive, and defendant must know the nature of the substance he is charged with possessing. *Ray*, 747 S.W.2d at 765. "[H]owever, if there is joint possession of the premises where the controlled substance was found, more evidence than just defendant's presence on the premises is necessary to

connect defendant to the controlled substance." *Id.* at 765–66.

In the instant case, there was sufficient evidence that reasonable persons might have found that Defendant possessed the marijuana. While this was a situation where more than one individual was present on the boat, there was more than just mere joint possession to support the charge of possession. The State's witness, Mr. Whiteside, testified that during a conversation approximately one week after the incident, Defendant stated that he had placed the marijuana in the boat. This, in conjunction with the fact that his testimony also revealed that Defendant was the one who had transported the boat from St. Charles, Missouri, to Lake Wappapello, provided sufficient evidence for the jury to find that Defendant was in fact in possession of a controlled substance. Point Five is denied.

In his sixth point, Defendant asserts that there was insufficient evidence to prove that Defendant had any intention to posses or distribute a controlled substance in Wayne County, Missouri. Defendant argues the State presented no evidence that the events occurred in Wayne County and therefore, venue was improper.

Venue is not an integral part of the offense and thus need not be proved beyond a reasonable doubt; it may be inferred from all the evidence. *State v. Mack*, 903 S.W.2d 623, 626 (Mo.App.1995); *State v. Harper*, 778 S.W.2d 836, 838 (Mo.App.1989). However, "even if the evidence is inadequate to allow venue to be inferred, venue is a personal prerogative which is waived by proceeding to trial without objection." *Mack*, 903 S.W.2d at 627; *State v. White*, 654 S.W.2d 288, 289 (Mo.App.1983). An objection to venue made for the first time at the close of the State's case or at the close of all the evidence comes too late. *Mack*, 903 S.W.2d at 627.

Defendant raised the issue of venue for the first time in Defendant's Motion for Judgment of Acquittal. The record is void of any other reference by Defendant on the issue of venue and there is no explanation why it was not raised earlier. If Defendant was truly

concerned about whether venue was proper, he had ample opportunity to raise the issue prior to trial as the Felony Complaint charged that the events occurred in Wayne County. If there was any question regarding the venue, Defendant should have raised it by motion prior to trial. *See Harper,* 778 S.W.2d at 838. Point Six is denied.

In Point Seven, Defendant asserts there was reasonable doubt that there were more than five grams of marijuana seized from Defendant. He argues that because the marijuana seized by police and weighed by the crime laboratory contained seeds and other plant material, that the sample did not meet the proper statutory definition of marijuana. Section 195.010(26) states that the statutory definition of marijuana:

[D]oes not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination.

Defendant asserts that the State's expert did not indicate whether the samples tested were legally prohibited portions of the marijuana plant or whether the samples tested were portions excluded from statutory prohibition. However, once the State demonstrated that the substance was marijuana, the burden was on Defendant to prove that the substance contained portions of the marijuana plant excluded from the statute. § 195.180.2; *State v. Lovelace,* 585 S.W.2d 507, 509 (Mo.App.1979); *see also State v. Underwood,* 715 S.W.2d 7, 8 (Mo.App.1986). Therefore, as Defendant failed to carry his burden on this issue, the point is denied.

## VI.

In his eighth point, Defendant claims the trial court committed plain error in failing to declare a mistrial *sua sponte* when officer Carnahan testified as to Defendant's post-Miranda silence. The testimony at issue contained the following exchange:

Q. [By the State]: All right. After you located State's Exhibit No. 1 and had the defendant and the two other individuals move to the side of the boat, what did you do?

A. [Officer Carnahan]: At that time I advised all three suspects of their rights per Miranda law. Each of the suspects stated that they understood their rights; I asked each one individually if they understood their rights, and they stated that they did. I then asked who the narcotics belonged to, and received no response.

Q.: No one would claim it, is that right?

A.: No, sir.

The following brief comment was then made during closing argument:

No one claimed ownership of the drugs at the time at the scene....

Defendant seeks plain error review as no objection to the testimony or the statement during closing argument was made at trial. Relief will be granted under the plain error rule only if the error so substantially affects the right of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Pepper,* 855 S.W.2d 500, 502 (Mo.App. 1993); *State v. Tate,* 850 S.W.2d 385, 388 (Mo.App.1993). "The Supreme Court of Missouri has instructed that relief should be granted on an assertion of plain error as to matters contained in closing argument only under extraordinary circumstances." *State v. Brown,* 912 S.W.2d 643, 645 (Mo.App. 1995).[5] "This is because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *Id.* at 645–46. "Errors committed during closing argument do not justify relief under the plain error standard unless they are determined to have had a decisive effect on the jury." *Id.* at 646.

Silence of an accused while under arrest is not admissible against him. *State v. Noel,* 871 S.W.2d 628, 629 (Mo.App.1994). The State may not use post-arrest silence either as affirmative proof of Defendant's

---

5. *See State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995).

guilt or to impeach Defendant's testimony. *Id.; State v. Mathenia*, 702 S.W.2d 840, 842 (Mo. banc 1986), *cert. denied* 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986). " 'It may not be shown that an accused failed to volunteer an exculpatory statement, nor may it be shown that, by his silence, he failed to deny or explain, while under arrest, an incriminating fact about which no question was asked.' " *Noel*, 871 S.W.2d at 629.

Defendant, however, has failed to demonstrate how he was prejudiced by Officer Carnahan's remark. Additionally, the comment made during closing argument was fleeting and it is unlikely it had a decisive effect on the jury. If any prejudice did result from the comments, it was minimal and certainly does not rise to the level of plain error required to reverse in the absence of an objection by Defendant at trial. *See Brown*, 912 S.W.2d at 645–46. Point Eight is denied.

### VII.

In his ninth point, Defendant alleges that the trial court committed plain error when it failed to declare a mistrial after the State supposedly commented on Defendant's failure to testify.

There are two comments during closing argument of which the Defendant complains. First, the prosecutor stated:

No one claimed ownership of the drugs at the time at the scene . . . .

Secondly, he remarked that:

Officer Carnahan said he went over [the boat] with a fine-toothed comb. No matches, no smoking apparatus. That means no pipes, no rolling papers, no bongs, no nothing. This wasn't for use; this was for distribution. Now keep in mind that the State doesn't have to prove that the defendant actually distributed it. . . . What we have is possession with intent to distribute, and unless the defendant wanted to get up and say 'well, I did it', the only way we can determine his intent is to look at the surrounding circumstances, and all of the surrounding circumstances, including the defendant's own words to Martin Whiteside, are that he intended to distribute this.

Once again, Defendant seeks our review of this allegation of error under the plain error standard as no objection to the comments were made at trial. "Because review is for plain error, the court must find not only error, but also that manifest injustice has resulted from the error." *State v. Dudley*, 724 S.W.2d 517, 521 (Mo.App.1986). It is well settled that relief should rarely be granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explication. *State v. Cobb*, 875 S.W.2d 533, 537 (Mo. banc 1994), *cert. denied* —— U.S. ——, 115 S.Ct. 250, 130 L.Ed.2d 172 (1994).

A trial court has wide discretion in controlling the scope of closing arguments as the trial judge is in the best position to determine their prejudicial effect. *State v. Lee*, 841 S.W.2d 648, 653 (Mo. banc 1992). As a general rule, the State may make neither direct nor indirect references to Defendant's failure to testify. *State v. Parkus*, 753 S.W.2d 881, 885 (Mo. banc 1988), *cert. denied* 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1990). "Where, as here, defendant makes no contemporaneous objection, we will disturb the trial court's decision on whether the prosecution did in fact allude to the 'defendant's failure to testify only when the references are *direct* and *certain*.' " *Id.*

Furthermore, a conviction will be reversed for improper argument only if it is established that the comment had a decisive effect on the jury's determination. *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993). For such a decisive effect to occur, "there must be a reasonable probability that, in the absence of these comments, the verdict would have been different." *State v. Roberts*, 838 S.W.2d 126, 132 (Mo.App.1992). The burden is on the Defendant to prove the decisive significance. *Parker*, 856 S.W.2d at 333.

We find no error in the trial court's failure to declare a mistrial *sua sponte*. The comments were neither direct and certain, nor were they intended to draw the jury's attention to Defendant's refusal to take the stand.

Instead, the purpose of the comment was to explain to the jury the familiar legal concept that intent may be inferred from the surrounding circumstances. Likewise, the prosecutor was entitled to use the testimony of Mr. Whiteside, wherein Defendant had admitted to Mr. Whiteside that Defendant had placed the marijuana on the boat. *See State v. Isa*, 850 S.W.2d 876, 894 (Mo. banc 1993). Taken in context, it cannot be said that the State's comments were a calculated attempt to emphasize Defendant's failure to testify. Neither has Defendant demonstrated that in the absence of the comment the jury's verdict would have been different. Defendant's Point Nine is denied.

## VIII.

In his tenth point, Defendant claims that the trial court erred in finding that Defendant was a prior drug offender, § 195.275.1(1), and a persistent drug offender, § 195.275.1(2). As a result of these findings, Defendant was sentenced to a term of ten years without the possibility of probation or parole.

Defendant contends there was insufficient evidence in the record on which the trial court could base its findings that Defendant was a prior and persistent offender.

The transcript shows that State's Exhibits 5 and 6 were introduced during sentencing. Exhibit 5 was a certified copy of the court record from the Circuit Court of Cape Girardeau County in Case No. CR588–1079F. The exhibit stated that Defendant had been convicted on two separate counts of selling marijuana. This exhibit was admitted without objection.

Since there was no objection made to the admission of State's Exhibit No. 5, and as it has not been included in the legal file for our review, we rely on the trial court's assessment of Defendant's status as a prior and persistent drug offender. "Failure to supply a sufficient record to permit determination of the issues presented results in the appellate court being unable to determine if the trial court erred and requires that the point be denied." *State v. Chowning*, 866 S.W.2d 165, 169 (Mo.App.1993) (citation omitted).

Exhibit 6 was a facsimile copy of a Department of Corrections record indicating Defendant's dates of incarceration, fingerprints and the booking procedures employed during Defendant's previous stay. Defense counsel objected to its admission solely on the ground that it was a facsimile copy and did not provide proof beyond a reasonable doubt that Defendant had been incarcerated for at least 120 days in the Missouri Department of Corrections. Defendant cites no authority as to how the failure to prove a 120 day incarceration is important. "We are not required to review points or arguments when they appear without citation of applicable authority." *State v. Conaway*, 912 S.W.2d 92, 95 (Mo.App.1995). "When no authority is cited and no explanation is given, points relied on are deemed waived or abandoned." *Id.* Defendant's tenth point is denied.

## IX.

In his eleventh point, Defendant asserts that the sentence of ten years in the Department of Corrections without possibility of probation or parole, constitutes cruel and unusual punishment under the eighth and fourteenth amendments to the federal constitution.

We give great deference to the legislature's prescription of punishment. *State v. Hill*, 827 S.W.2d 196, 198 (Mo. banc 1992). "When the sentence imposed is within the range prescribed by the statute, it cannot be judged excessive by the appellate court and the consecutive effect of the sentences does not constitute cruel and unusual punishment." *State v. Donnell*, 862 S.W.2d 445, 453 (Mo.App.1993). "[T]he Eighth Amendment contains no proportionality guarantee." *Id.; Cain v. State*, 859 S.W.2d 715, 718 (Mo.App.1993), *cert. denied* 511 U.S. 1086, 114 S.Ct. 1840, 128 L.Ed.2d 467 (1994).

In the present action, this was Defendant's third offense. As such, he was sentenced as a persistent drug offender. The ten year sentence without possibility of probation or parole was within the statutorily prescribed limit. The statute allowed for a minimum

sentence of ten years and a maximum of life. Movant's sentence was within the discretion and authority of the trial court.

The judgment of the trial court in Case No. 19834 is affirmed.

#### Case No. 20769—Postconviction Relief

■ Movant appeals from the motion court's denial of his Rule 29.15 motion after an evidentiary hearing. He asserts that the motion court erred in finding that trial counsel was not ineffective in failing to take the deposition of State's witness Mr. Whiteside.

■ Appellate review of an order overruling a Rule 29.15 motion is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. *State v. Driver*, 912 S.W.2d 52, 54 (Mo. banc 1995); *State v. Davenport*, 924 S.W.2d 6, 13 (Mo.App.1996). Findings and conclusions are deemed clearly erroneous only if a review of the entire record leaves this Court with a definite and firm impression that a mistake has been made. *Gallimore v. State*, 924 S.W.2d 319, 320 (Mo.App.1996).

■ To prevail on a claim of ineffective assistance of counsel, Movant must show that counsel failed to provide reasonably effective assistance and that Movant was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Gray*, 887 S.W.2d 369, 380–81 (Mo. banc 1994), *cert. denied* — U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). Absent a showing to the contrary, counsel is presumed to have provided effective assistance. *Wilhite v. State*, 845 S.W.2d 592, 594–95 (Mo.App.1992). In order to show prejudice, Movant must show that but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Gray*, 887 S.W.2d at 381. Prejudice must be affirmatively proved. *State v. Stepter*, 794 S.W.2d 649, 656 (Mo. banc 1990). Furthermore, if it is simpler to dispose of a claim of ineffective assistance of counsel on the ground of lack of sufficient prejudice, that course should be followed. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069–70; *State v. Howard*, 896 S.W.2d 471, 488 (Mo.App.1995).

There is no reason for a court to address both components of the inquiry if Movant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069–70; *Howard*, 896 S.W.2d at 488.

Movant's First Amended Motion for Post–Conviction Relief alleges that:

> Movant was denied effective assistance of counsel by his trial counsel in that the trial counsel did not seek to take corrective measures to cure the subpoena defect for the deposition of the State's key eyewitness to allow proper preparation for the defense at trial;

Movant has failed to demonstrate how he was prejudiced by defense counsel's failure to depose Mr. Whiteside.

■ Counsel had the opportunity to cross examine Mr. Whiteside at the preliminary hearing. In addition, counsel was given an opportunity to meet with Mr. Whiteside for as long as he needed during a trial recess. Counsel in no way has demonstrated that the testimony Mr. Whiteside gave at trial would have been discovered or elicited from him during deposition. Finally, there was no evidence that the deposition would have presented reasonable doubt as to guilt. Movant "must demonstrate that there is a reasonable probability that, absent the alleged error, the jury would have had a reasonable doubt as to guilt." *Hamilton v. State*, 770 S.W.2d 346, 348 (Mo.App.1989).

Even if Movant could demonstrate that the statement would have been discovered during the deposition, he has not demonstrated that this would have, in some way, been exculpatory. At most, he could only have attempted to impeach or discredit Mr. Whiteside. He was given this opportunity at trial during cross examination.

The judgment of the motion court is affirmed.

GARRISON, J., concurs in result.

PREWITT, J., concurs.