**Danny C. SITTON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 23245.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 30, 2000.

Nancy A. McKerrow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Troy Allen, Asst. Atty. Gen., Jefferson City, for respondent.

BARNEY, Judge.

Danny Sitton ("Movant") appeals from a judgment of the Circuit Court of Dade County denying his 29.15 motion after an evidentiary hearing. He raises two points of motion court error. He first contends that the motion court erroneously denied his motion because his trial counsel in the underlying criminal case rendered ineffective assistance of counsel "when he failed to object to the prosecutor's closing argument in which the prosecutor made an improper indirect reference to [Movant's] failure to testify . . . ." In his second point, Movant claims motion court error in that Movant's trial and appellate counsel in the underlying case rendered ineffective assistance of counsel in that they failed to properly present to either the trial or appellate court the State's failure to timely disclose "the deal it made with Gordon Carey. . . ."

In the underlying criminal case, Movant had been convicted of assault in the first degree and armed criminal action in connection with the shooting of Jimmy De-Rubba. *See* §§ 565.050 and 571.015, RSMo 1994. At trial, the evidence showed that Mr. DeRubba was shot in the side while sitting in his car. He was hospitalized for three days and sustained a permanent scar from just below his left breast to just below his belly button. After the shooting Movant asked Gordon Carey, a friend of twenty-two years, for help "to get rid of . . . evidence." Movant gave Carey the gun used in the shooting and Carey subsequently hid the weapon at a third location. Later, Carey turned over the gun to the police. Movant was sentenced to thirty years' imprisonment on the assault charge and 10 years' imprisonment on the armed criminal action charge, the sentences to run consecutively.

"We will not disturb a motion court's judgment denying post-conviction relief unless we determine its findings and conclusions are clearly erroneous." *State v. Smith*, 949 S.W.2d 901, 906 (Mo.App. 1997). "Further, we will find the motion court's determination clearly erroneous only if a review of the entire record leaves a definite and firm impression that a mistake has been made." *Id.* Further still, "[m]ovant 'must demonstrate that there is a reasonable probability that, absent the alleged error, the jury would have had a reasonable doubt as to guilt.'" *State v. Sullivan*, 935 S.W.2d 747, 761 (Mo.App. 1996) (quoting *Hamilton v. State*, 770 S.W.2d 346, 348 (Mo.App.1989)).

"To prevail on a claim of ineffective assistance of counsel, [Defendant] must establish by a preponderance of the evidence 'that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby.'" *State v. Simmons*, 944 S.W.2d 165, 181 (Mo. banc 1997) (quoting *Moore v. State*, 827 S.W.2d 213, 215 (Mo. banc 1992)). Necessarily "[a] movant must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim." *State v. Boyce*, 913 S.W.2d 425, 429 (Mo.App.1996). "The motion court, and this court, may proceed directly to the issue of prejudice without first determining whether counsel's conduct was deficient." *Id.* "[I]f it is simpler to dispose of a claim of ineffective assistance of counsel on the ground of lack of sufficient prejudice, that course should be followed." *Sullivan*, 935 S.W.2d at 761. "Prejudice exists where there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's ineffectiveness." *Smith*, 949 S.W.2d at 906. "Absent a showing to the contrary, counsel is presumed to have provided effective as-

sistance." *State v. Gorman*, 940 S.W.2d 543, 547 (Mo.App.1997).

## I.

In his first point, Movant contends he was denied ineffective assistance of counsel when his trial counsel failed to object to a statement by the prosecutor during closing argument. The statement complained of was, as follows:

> And, you know, why would [Movant] give this gun away to someone, to Mr. Carey? Well, him and Mr. Carey had been friends for 22 years. You've heard Mr. Carey's testimony. Nobody has contradicted that.

Movant complains that such a statement was an impermissible reference to his decision not to testify and constituted an indirect reference to Movant's failure to testify.

"It is permissible ... for a prosecuting attorney to argue the effect of evidence presented and the reasonable inferences drawn from the evidence." *State v. Redman*, 916 S.W.2d 787, 792 (Mo. banc 1996). "A prosecutor may argue that evidence is uncontroverted or uncontradicted." *Id.* "Merely stating that the evidence is 'uncontradicted' or that a defendant has failed to offer evidence is not a direct and certain reference [to Movant's failure to testify]."[1] *State v. Gardner*, 743 S.W.2d 472, 473 (Mo.App.1987). "An indirect reference is one reasonably apt to direct the jury's attention to defendant's failure to testify." *Lawhorn*, 762 S.W.2d at 826. "Although a direct reference to the failure of the defendant to testify will generally require reversal of the conviction, an indirect reference is improper only if the prosecutor demonstrates a calculated intent to magnify the defendant's decision not to testify so as to call it to the jury's attention." *State v. Richardson*, 923 S.W.2d 301, 314 (Mo. banc 1996); *see also Redman*, 916 S.W.2d at 793.

---

1. "A direct reference to an accused's failure to testify is made when the prosecutor uses words such as 'defendant,' 'accused' and 'tes- tify' or the equivalent." *State v. Lawhorn*, 762 S.W.2d 820, 826 (Mo. banc 1988).

"When considering a defendant's claim of an improper comment on his right to remain silent, the appellate court must also consider the comment in the context in which it appears." *State v. Neff,* 978 S.W.2d 341, 345 (Mo. banc 1998). Reviewing the prosecutor's comment in context, it is a reasonable interpretation of his remarks that he was commenting that nobody had contradicted the fact that Movant and Carey were friends, and had been friends for twenty-two years. Movant's trial attorney had spent a large portion of his closing argument positing that there was no reason why Movant would give the gun to Carey and that Carey was lying to protect himself. During rebuttal, the prosecutor was simply trying to explain the reasons why Movant might have given the gun to Carey. The prosecutor made the complained of statement and then went on to say:

> He also knows that Carey has been in trouble.... If a reasonable person was trying to get rid of a weapon that they shot somebody with, yeah, they might throw it in a lake. They might take it to someone else.... Would it be reasonable to take it to the banker? Would you take it down to the cops? No, he was hiding from the cops. Would you take it to the person next door? No, you'd probably take it to someone that you know and thought you could trust for all time, maybe someone else that you figured might have a little knowledge about this kind of stuff, because that person had been in trouble too. They had been friends for 22 years.

We conclude that the prosecutor's comment did not demonstrate a "calculated intent to magnify the defendant's decision not to testify so as to call it to the jury's attention." *Richardson,* 923 S.W.2d at 314. Movant's trial counsel's failure to object to such a comment was therefore not ineffective assistance of counsel. Movant's first point on appeal is denied.

## II.

In his second point on appeal, Movant claims that the motion court erred in denying his 29.15 motion because both Movant's trial and appellate counsel provided ineffective assistance in failing to raise the issue of the State's failure "to timely disclose the deal it made with Gordon Carey ...." Movant complains that such failure prejudiced him in that "[h]ad the deal with Carey been disclosed, [Movant's] trial attorney would have certainly used it to impeach his testimony."

As previously noted, Movant must show that his trial counsel's deficient performance prejudiced his trial in order to establish his claim for ineffective assistance of trial counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.E.2d 674 (1984). To do this, Movant had to show that but for his trial counsel's errors, there is a reasonable probability that result of his trial would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994).

Assuming *arguendo* that there was a deal and the prosecutor failed to formally disclose it, we cannot say that Movant's trial or appellate counsels were ineffective in their alleged, respective "failures to raise that issue at trial or on appeal" because we do not believe that Movant was prejudiced by these purported failures.

Our review of the record indicates that in over eight pages of trial testimony Movant's trial counsel impeached Carey by questioning him at length about various charges unrelated to this case and asked Carey if he was "looking at a possibility of doing up to 49 years." Trial counsel also questioned Carey about his previous criminal convictions. Additionally, Movant's trial counsel alluded to conversations between Carey and trial counsel's investigator the previous summer, regarding the prosecution's purported threats to charge Carey with possession of the gun in ques-

tion if he didn't cooperate. Further, Movant's attorney cross-examined Carey regarding a deal with the prosecutor relating to Carey's guilty pleas to some of the previously mentioned pending charges in exchange for a "120–day callback" where he would spend approximately 120 days in a special "shock" program.[2] We also discern from our review of the trial record that Movant's trial counsel certainly knew there had been some sort of deal made, as evidenced by his comment to the trial court when Carey denied the existence of such a deal. Trial counsel stated: "Judge, either somebody is lying to me, or [the Prosecutor] is or [Carey] is, because when [we] were talking about this stuff earlier, [the Prosecutor] told me [Carey] had a deal to testify truthfully."

Movant's trial counsel effectively impeached Carey. Our review of the entire record does not leave us with a "definite and firm impression that a mistake has been made." *Harris*, 870 S.W.2d at 814–15. Neither trial nor appellate counsel acted ineffectively. *Boyce*, 913 S.W.2d at 429. Movant's second and final point is denied.

The judgment of the motion court is affirmed.

GARRISON, C.J. and MONTGOMERY, P.J., concur.

---

**2.** As best we can discern from the record, only *after* the 120-day "shock" program agreement was made with Carey, was Carey's connection with the case at hand discovered by authorities. It appears that Carey was then told that his truthful testimony in the case at hand constituted a condition of his being granted *probation* after the 120-day call back.