Jairo CARDONA–RIVERA, Appellant,

v.

STATE of Missouri, Respondent.

No. 23118.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 9, 2000.

Motion for Rehearing or Transfer
Denied Dec. 5, 2000.

Application for Transfer Denied
Jan. 23, 2001.

Christopher J. Angles, Erker, Norton & Hare, L.L.C., Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before CROW, J., GARRISON, J., and BARNEY, C.J.

PER CURIAM.

Jairo Cardona–Rivera ("Movant") appeals from a judgment of the Circuit Court of New Madrid County denying his Rule 29.15 motion to vacate, set aside or correct a prior judgment and sentence for trafficking in the first degree as a prior offender. He received a prison term of 30 years without eligibility for probation or parole.[1] § 195.222.2(2), RSMo Cum.Supp.1993; *see State v. Cardona–Rivera*, 975 S.W.2d 200, 202 (Mo.App.1998). Movant raises two points of motion court error. He first contends that the motion court erred in overruling his post-conviction relief motion because his trial counsel was ineffective for failing to object, pursuant to the Vienna Convention on Consular Relations ("Vienna Convention"), to the use of Movant's "statements." He contends he was prejudiced by his trial counsel's purported failure because without these "statements" he "would probably have been acquitted." In his second point, Movant contends the motion court erred in overruling his Rule 29.15 motion because his trial counsel was ineffective at trial for failing to object to

the admission of the "unlawfully seized cocaine." Movant asserts he was thereby prejudiced because absent the cocaine evidence his case would have been dismissed or he likely would have been acquitted.

 We do not disturb a motion court's judgment denying post-conviction relief unless we determine its findings and conclusions are clearly erroneous. *Sitton v. State*, 17 S.W.3d 917, 920 (Mo.App.2000). "[W]e will find the motion court's determination clearly erroneous only if a review of the entire record leaves a definite and firm impression that a mistake has been made." *Id.* Movant must demonstrate that there is a reasonable probability that, absent the alleged error, the jury would have had a reasonable doubt as to guilt. *Id.*

 In our review of Movant's first point, he appears to argue that inculpating statements made to state troopers, at the scene of his arrest and when bundles of cocaine were found in a suitcase in the trunk of his car, should be suppressed because he was not warned of his alleged rights under Article 36(1)(b) of the Vienna Convention to have the Columbian consulate notified of his arrest.[2] Even assuming *arguendo* that at the time of the arrest Movant met the foundational requirements showing that he, indeed, was a citizen of Columbia, we nevertheless find that Movant's first point has no merit.[3]

---

1. All rule references are to Missouri Court Rules (2000).

2. *See* Vienna Convention on Consular Relations (Vienna Convention), April 24, 1963, [1970] 21 U.S.T. 77, T.I.A.S. No. 6820. Article 36(1)(b) sets out that:

 [I]f he so requests the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities

without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

3. The record shows that Movant spoke English with the state troopers at the time of his arrest, albeit with an accent. He admitted that he was the vehicle's owner and produced a registration confirming his ownership. He also related, apparently in English, that he did not know the driver's name, where the trip originated or where they were going. *See Cardona–Rivera*, 975 S.W.2d at 202. Trooper Elfrink read Movant his Miranda rights and Movant acknowledged these rights by saying "yes and nodd[ing] his head." *See Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966). Dur-

As best we can ascertain, the contention asserted by Movant in his first point of motion court error is a matter of first impression in the State of Missouri.[4] We note that "[t]he [United States] Supreme Court has treated the issue of whether [the Vienna Convention] creates any judicially enforceable rights as an open question...." *U.S. v. Lombera–Camorlinga,* 206 F.3d 882, 885 (9th Cir.2000). *Lombera–Camorlinga, supra,* involved similar facts and contentions as those found in the instant case. In *Lombera–Camorlinga* a Mexican national charged with drug offenses moved to suppress evidence of his post-arrest statements, on the basis that he had not been informed of his rights under the Vienna Convention to notification of his consulate. After his motion was denied, and after his conviction on drug charges, he appealed to the 9th Circuit Court of Appeals. The court en banc observed that "the treaty does not link the required consular notification in any way to the commencement of police interrogation." *Id.* at 886. "Nor does the treaty, as *Miranda* does, require law enforcement officials to cease interrogation once the arrestee invokes his right." *Id.* The court noted that "while the rights to counsel and against self-incrimination are secured under the Fifth and Sixth Amendments to our own Constitution and are essential to our criminal justice system, they are by no means universally recognized or enforced." *Id.* "[E]ven today European countries typically afford no right to counsel during police questioning." *Id.* (citing Gordon Van Kessel, *"European Perspectives on the Accused as a Source of Testimonial Evidence,"* 100 W. Va. L.Rev. 799, 810 (1998)). The court en banc also observed that "[t]here is no reason to think the drafters of the Vienna Convention had [unique] American rights in mind, especially given the fact that even the United States Supreme Court did not require Fifth and Sixth Amendment post-arrest warnings until it decided *Miranda* in 1966, three years after the treaty was drafted." *Lombera–Camorlinga,* 206 F.3d at 886. The court en banc concluded: "assuming that some judicial remedies are available for the violation of Article 36, the exclusion in a criminal prosecution of evidence obtained as the result of post-arrest interrogation is not among them." *Id.; accord U.S. v. Li,* 206 F.3d 56, 60 (1st Cir. 2000) ("We hold that irrespective of whether or not the treaties create individual rights to consular notification, the appropriate remedies do not include suppression of evidence or dismissal of the indictment.").

While we recognize that the foregoing federal authorities are generally not binding on Missouri state courts, *Futrell v. State,* 667 S.W.2d 404, 407 (Mo. banc 1984); *State v. Cammon,* 959 S.W.2d 469, 473 (Mo.App.1997), their analysis and conclusions are particularly compelling in the context of our review of Movant's claim of error. Accordingly, we adopt their rationale. Movant suffered no prejudice by not having been informed of the provisions of Article 36 of the Vienna Convention after his arrest. Point denied.

In his second point, Movant posits that his trial counsel was ineffective for failing to object at trial to the admission of the seized cocaine found in a suitcase in the trunk of Movant's vehicle.

"In order to prevail on a claim of ineffective assistance, appellant must prove by a

---

ing the hearing on the federal suppression motion (later adopted in the state proceedings), Trooper Heath was asked: "And you had already ascertained [at the arrest site] that Mr. Rivera was a foreign-national?," and answered, "No, sir, I do not believe he ever gave me any kind of credential in that." As best we can glean, the record is devoid of any indication that Movant ever informed the state troopers that he was a Columbian citizen, particularly at the time of his arrest. Lastly, in his post-conviction relief hearing, Movant testified that he had lived in the United States since 1984.

4. *State v. Joos,* 735 S.W.2d 776, 784 (Mo.App. 1987) made but tangential reference to the Vienna Convention and only in the context of diplomatic immunity, a subject not implicated in the review of the instant case.

preponderance of the evidence that counsel was ineffective by failing to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances, and that appellant was prejudiced as a result ." *State v. Clay*, 975 S.W.2d 121, 135 (Mo. banc 1998), cert. denied, 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). "There are two, separate requirements embodied in this analysis. Counsel must have been ineffective and, in addition, the ineffectiveness must have prejudiced the appellant. If either of these requirements is not met, then a claim for ineffective assistance will fail." *Clay*, 975 S.W.2d at 135.

■ "To prove prejudice, the movant must show a 'reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.' " *Shurn*, 866 S.W.2d at 468(quoting *State v. Ervin*, 835 S.W.2d 905, 929 (Mo. banc 1992)). "In arguing ineffectiveness, appellant must overcome a strong presumption that counsel's performance was sound trial strategy." *Clay*, 975 S.W.2d at 135. The standard for judging ineffective assistance for failure to object is clear:

> In many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.

*State v. Tokar*, 918 S.W.2d 753, 768 (Mo. banc 1996). "The movant must prove that

a failure to object was not strategic and that the failure to object was prejudicial." *Clay*, 975 S.W.2d at 135. "Counsel will not be deemed ineffective for failing to make nonmeritorious objections." *Id.*

■ The record shows that Movant's counsel filed two motions to suppress the evidence found at the arrest scene: once during the course of federal prosecution proceedings against Movant in the United States District Court, as well as during the course of his state prosecution in the Circuit Court of New Madrid County.[5] Movant did not prevail in either forum. The record leaves little doubt that the state troopers were aware that Movant owned the vehicle. The record also reveals that the troopers at the scene asked the driver of the vehicle for his consent to the search of the vehicle. He granted it. Movant, however, took no steps to protest the search, either physically or verbally. Indeed, Movant complied without protest when asked to step outside of his vehicle and move to the front of the vehicle. Trooper Heath testified during the suppression hearing that "I advised him that I was gonna search and he willingly exited the vehicle and did exactly what I asked and didn't object in any way." Furthermore, Movant later cooperated with the troopers at the scene in identifying the cocaine found in the suitcase in the trunk of his vehicle.[6]

■ "Whether a consent was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances . . . ." *State v. Peterson*, 964 S.W.2d 854, 857 (Mo.App.1998). "Missouri law recognizes that authority to give

5. As best we can glean from the record due to apparent violation of time requirements for prosecution, the federal case against Movant was dropped.

6. After reading Movant his *Miranda* rights, the state troopers engaged Movant in a conversation in English. At first he denied knowing what was in the suitcase. Subsequently, he cooperated with state troopers and ac-

knowledged that the bundles found in the suitcase were cocaine. According to state trooper Elfrink, he said "you know it's clocaine [sic] and he said it with an L in the pronunciation." He also indicated that he was getting paid a thousand dollars to deliver the cocaine and told Trooper Elfrink that there "was six or seven kilos" of cocaine in the suitcase.

consent rests upon mutual use and joint access or control of property by an individual, not property law." *State v. Moore,* 972 S.W.2d 658, 661 (Mo.App.1998).[7] Based on the totality of the circumstances, including the driver's consent to the search of the vehicle and coupled with Movant's tacit and uncoerced consent to the search, we fail to see where Movant was prejudiced by his trial counsel not objecting to the admission of the cocaine into evidence. *See Clay,* 975 S.W.2d at 135. "Counsel cannot be ineffective for failing to make a nonmeritorious objection." *State v. Bickham,* 917 S.W.2d 197, 199 (Mo.App.1996). "That an attorney does not object to everything objectionable does not demonstrate incompetence." *State v. Elder,* 901 S.W.2d 87, 91 (Mo.App.1995). "That an attorney does not make a meritorious objection does not demonstrate incompetence unless the remaining record establishes that the attorney's overall performance fell short of established norms and that this incompetence probably affected the result." *Id.*

Movant is not entitled to any relief because we find no indication of overall incompetence in his attorney's defense of his case. *See id.* Our review of the entire record does not leave us with a definite and firm impression that a mistake has been made. *Sitton,* 17 S.W.3d at 922. Point denied.

The judgment of the motion court is affirmed.